*Gary Alan Glass v. Anne Arundel County, Maryland, et al.*
No. 20, September Term 2016


**Public Information Act – Custodian of Records.** When a government agency stores records with another entity – for example, when it stores digital records such as emails with another government agency – but retains control (albeit not physical custody) of those records, the agency remains responsible for responding to requests for access to those records under the Public Information Act ("PIA"). The agency's custodian of such records must carry out the responsibilities of a custodian of records under the PIA. Maryland Code, General Provision Article, §4-201 *et seq.*

**Public Information Act – Reasonableness of Search.** In responding to a PIA request, an agency must undertake a reasonable search in a good faith effort to locate all records responsive to the request. The reasonableness of the search is not measured by whether it captures every potentially responsive record. Rather, the adequacy of a search is to be assessed in light of all the relevant circumstances, including the nature of the request and the willingness of the requestor to focus the request on likely sources of responsive records. Maryland Code, General Provisions Article, §4-201 *et seq.*

**Public Information Act – Liability for Damages – Knowing and Willful Violation.** There was not clear and convincing evidence that an agency knowingly and willfully violated the PIA when it conducted a search of archived email in response to a broadly worded PIA request, reported the results of that search to the requestor, estimated the fees for review of the emails for privileged material (under alternative ways of proceeding with the review) prior to inspection by the requestor, and requested direction from the requestor. Maryland Code, General Provisions Article, §4-362(d).

**Public Information Act – Personnel Records Exception – Police Internal Affairs Files.** Records related to an investigation of alleged employee misconduct, such as records gathered as part of an investigation by the internal affairs division of a police department, fall within the "personnel records" exception of the PIA if the records are part of an investigation of a specific identifiable employee, whether or not the records name that employee. The exception applies even if a broadly-worded PIA request that encompasses such records does not directly request the records of the internal affairs investigation. Maryland Code, General Provisions Article, §4-311.

**Public Information Act – Injunctive Relief.** When an agency has conducted a reasonable search in response to a PIA request, a circuit court may decline to require a follow-up search even if it is later determined that the search failed to locate a particular record. Maryland Code, General Provisions Article, §4-362(c)(3).

Circuit Court for Anne Arundel County
Case No. 02-C-12-170607
Argument:  October 13, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 20

September Term, 2016

─────────────────────────────

GARY ALAN GLASS

V.

ANNE ARUNDEL COUNTY,
MARYLAND, ET AL.

─────────────────────────────

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

─────────────────────────────

Opinion by McDonald, J.
Watts, J., concurs.

─────────────────────────────

Filed:  May 25, 2017

This case began with what Petitioner's counsel characterized at trial as an episode of "road rage" between a motorist and an off-duty police officer in September 2010. Who was at fault we do not know and need not determine. An investigation into the officer's conduct apparently exonerated the officer; a traffic citation issued to the motorist resulted in an acquittal.

The matter did not end there. It has achieved an afterlife in several judicial and other forums over the past six years. This appeal stems from one of several public records requests under the Maryland Public Information Act ("PIA") made by the motorist, Petitioner Gary A. Glass, to the Police Department of Respondent Anne Arundel County. The response to that request was coordinated by Respondent Christine Ryder, the Police Department's records manager.

The records requests submitted by Mr. Glass to the Police Department initially targeted the traffic stop and the internal affairs file created by the Police Department in response to complaints by Mr. Glass about the officer, but later encompassed "any and all" records related to Mr. Glass. Dissatisfied with the handling of his requests, Mr. Glass filed at least two lawsuits under the PIA against the County. The lawsuits have resulted in numerous rulings since 2011 by at least five judges of the Circuit Court for Anne Arundel County, made against the backdrop of three contemporaneous decisions by this Court concerning the limits on public access to police internal affairs files under the PIA.

As a result of the rulings in the Circuit Court, Mr. Glass obtained a number of records that the County had not found in its initial searches in response to his requests or

had initially withheld as privileged. Following a bench trial about whether the County had committed "knowing and willful" violations of the PIA, the Circuit Court held that the County had done so in two respects, but declined to award Mr. Glass the injunctive relief or damages he sought. The Court of Special Appeals disagreed with the Circuit Court in part and held that there was not clear and convincing evidence of any such violations; it agreed with the Circuit Court that Mr. Glass was not entitled to the relief he sought.

The alleged violations of the PIA turn on whether the County conducted reasonable searches in response to the PIA requests made by Mr. Glass, whether the County actually denied him access to responsive, non-privileged records, and whether a particular privilege (for personnel records) was properly asserted by the County with respect to certain records. For the reasons explained below, we reach the same result as the Court of Special Appeals.

**I**

**Background**

**A.      *The Maryland Public Information Act***

1.      General Right of Access to Public Records

The Maryland Public Information Act is currently codified at Maryland Code, General Provisions ("GP"), §4-101 *et seq.*[1] The statute is similar, although not identical,

---

[1] At the time that Mr. Glass made the records requests that are the subject of this case, the PIA was codified at Maryland Code, State Government Article ("SG"), §10-611 *et seq.* In 2014, as part of code revision, the PIA was recodified as part of the new General

2

to the federal Freedom of Information Act ("FOIA").[2]  This Court has frequently relied on case law under FOIA in deciding similar issues under the PIA.  *See, e.g., Fioretti v. Maryland State Board of Dental Examiners*, 351 Md. 66, 76 (1998).

Based on the principle that "[a]ll persons are entitled to have access to information about the affairs of government and the official acts of public officials and employees,"[3] the statute provides members of the public with a right to inspect and copy public records, subject to certain exceptions.  "Public record" is defined broadly as documentary material that is made or received by a unit of State or local government "in connection with the transaction of public business."  GP §4-101(j).  The statute lists a number of examples of the myriad forms that a public record may take in addition to paper documents, including digital or electronic versions.  *Id.*  For example, email messages sent in connection with public business have long been considered to fall within the definition.  *See* 81 *Opinions of the Attorney General* 140, 144 (1996).

The PIA spells out a general process for a person to request and obtain access to a public record (or, if access is denied, learn the reason why).  GP §4-201 *et seq.*  The statute is to be construed "in favor of allowing inspection of a public record, with the least cost

Provisions Article.  Chapter 94, §2, Laws of Maryland 2014.  In this opinion we shall refer to the provisions of the PIA by their current codification, unless otherwise noted.

[2] 5 U.S.C. §552.

[3] GP §4-103(a).

and least delay" to the requestor, unless "an unwarranted invasion of … privacy" would result with respect to a particular person to whom the record pertains. GP §4-103(b).

2. Exceptions to Disclosure Obligation

While the PIA creates a general right of access to public records, it also sets forth numerous exceptions to that general rule. The exceptions fall into four basic categories.

*(1) Disclosure Controlled by Other Law.* The PIA generally defers to the dictates of other laws that control disclosure of a particular public record. Thus, if another law – *e.g.,* constitutional provision, statute, common law privilege – forbids disclosure of a record, or gives the agency discretion not to disclose the record, that other law controls disclosure of the record. *See* GP §4-301.[4] For example, a record of a communication covered by attorney-client privilege would not be disclosed in response to a PIA request, unless the client waived the privilege. GP §4-301(1).

*(2) Mandatory Exceptions.* The PIA itself forbids disclosure of certain specified categories of *records*. *See* GP §4-304 *et seq.* Similarly, the statute forbids an agency from disclosing certain types of *information* that may appear in a record, even if other parts of the record are open to inspection. *See* GP §4-328 *et seq.* These exceptions to the PIA's

---

[4] The PIA also defers to "other law" to the extent that other law makes a record available to public inspection, even if the PIA would allow an agency to withhold the record. Each of the categories of exceptions to disclosure created by the PIA is qualified by the phrase "[u]nless otherwise provided by law…" *See* GP §§4-304, 4-328, 4-343. Thus, if other law provides for disclosure of a particular record, that mandate trumps the specific exceptions to disclosure set forth in the PIA.

4

general rule of disclosure are often called mandatory exceptions. An example of a mandatory exception for entire records, pertinent to this case, is the exception for personnel records of public employees. GP §4-311.[5] An example of a mandatory exception for information (that may be only a portion of a record) is the exception for confidential commercial information. GP §4-335.[6]

*(3) Discretionary Exceptions.* The PIA specifies other categories of records or information that an agency may withhold from public inspection if it believes that disclosure "would be contrary to the public interest." GP §4-343 *et seq.* For example, a custodian may deny inspection of interagency or intra-agency letters and memoranda that contain pre-decisional deliberations. GP §4-344. Another example is a record of an investigation conducted by police or prosecutors as well as "an investigatory file compiled for any other law enforcement, judicial, correctional, or prosecution purpose." GP §4-351(a).[7] These exceptions to the PIA's general rule in favor of disclosure are often referred to as discretionary exceptions. They are "discretionary" not in the sense that the agency may withhold or disclose as it pleases, but in the sense that the agency must make a

---

[5] A personnel record is disclosable to "the person in interest" – *i.e.*, the employee – and to an official who supervises the employee. GP §4-311(b).

[6] *See, e.g., Amster v. Baker*, ___ Md. ___ (2017).

[7] An agency may deny inspection of investigatory records to a "person in interest" only if certain specified harms might result from inspection – for example, interference with a law enforcement proceeding. GP §4-351(b).

judgment whether the statutory standard for withholding a record – that is, disclosure "would be contrary to the public interest" – is met.

*(4) Catch-all Exception by Court Order.* Finally, even when disclosure of a record is not controlled by other law or precluded by one of the PIA's mandatory or discretionary exceptions, an agency may – subject to certain procedural requirements – temporarily deny inspection of the record if the official custodian believes that inspection would cause "substantial injury to the public interest." GP §4-358(a). The agency must promptly seek a court order in order to continue to withhold the record. *See Glenn v. Department of Health and Mental Hygiene*, 446 Md. 378 (2016).

3. The Role of the Custodian of Records

The PIA assigns important responsibilities in responding to PIA requests to a "custodian" of records. The statute defines "custodian" as "any ... authorized individual who has physical custody and control of a public record." GP §4-101(d)(2). As is evident, an agency may have many custodians of its records. A custodian of records has the responsibility for responding to a PIA request by either allowing inspection of the requested records or asserting the appropriate exceptions. *See* GP §4-201 *et seq.*, §4-301 *et seq.*

Certain special responsibilities are assigned to the "official custodian," defined as an "officer or employee [of the agency] who is responsible for keeping a public record, whether or not the officer or employee has physical custody and control of the public record." GP §4-101(f). Some decisions are reserved to the official custodian, such as designating records to be disclosed without a written request and deciding when to seek a

6

court order under the catch-all exception. GP §§4-201(c), 4-358. An official custodian is also responsible for "adopting reasonable rules or regulations that ... govern timely production and inspection of a public record." GP §4-201(b).

In practice, an agency may designate one of its employees, perhaps called a records manager or PIA coordinator, to receive PIA requests and coordinate searches and responses to such requests rather than have each individual custodian (which may include most employees) respond piecemeal to records requests. In responding to a PIA request, a designated custodian generally must enlist the assistance of others who actually hold the records. However, a custodian to whom a PIA request is directed remains responsible for ensuring that the request is appropriately addressed. *Ireland v. Shearin*, 417 Md. 401, 409-10 (2010); *ACLU Foundation of Maryland v. Leopold*, 223 Md. App. 97, 125 (2015) (the official custodian may not "kick the PIA responsibility down the chain of command").

4.    The Process for Requesting Access to Records

A person who wishes to inspect or copy public records typically submits a written request to the appropriate custodian of records. GP §4-202.[8] In responding to a PIA request, the agency is to conduct a search for responsive records. As is the case under the FOIA, the adequacy of the agency's search is measured by whether it is reasonably

---

[8] If the application is directed to the wrong government official or employee – *i.e.*, one who is *not* a custodian of the requested records – that individual must notify the requestor immediately and, if possible, direct the requestor to the appropriate custodian. GP §4-202(c).

calculated to uncover responsive records, not by whether it locates every possible responsive record. *See Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246-47 (4th Cir. 1994).

The custodian is to grant or deny the request to inspect the records within 30 days. If the request is granted, the records are to be made available immediately or after a reasonable time necessary to retrieve them. GP §4-203. If the request is denied in whole or in part, the custodian is to provide a written explanation of that decision that includes the reasons for the denial, the legal authority supporting the denial, and notice of how the requestor may seek review of that decision. *Id.* This means that the custodian must specify which exceptions to the general rule of disclosure apply to any records that are being withheld from the requestor. If a particular exception applies to only part of a record, the custodian is to allow inspection of those parts of the record that are open to inspection. GP §4-203(c)(1)(ii).

5.      Fees

An agency may charge a reasonable fee for fulfilling a PIA request, including the costs of searching for records responsive to the request, reviewing those records for material that falls within an exception to the PIA's general rule of disclosure, and making copies of the records. GP §4-206.[9] The fee assessed to the requestor must bear a reasonable relationship "to the recovery of actual costs incurred by a governmental unit" for the search,

_____

[9] The statute provides that an agency may not charge for the first two hours of search and review time. GP §4-206(c).

8

preparation, and reproduction of requested public records. *Id.* The fee may be waived if the custodian decides that it is in the public interest to do so. *Id.* Following the practice of federal agencies under FOIA, agencies sometimes require pre-payment of fees or a commitment to pay fees when the cost of processing a PIA request is likely to be substantial. *See* Office of the Attorney General, Maryland Public Information Act Manual (14th ed. 2015) ("PIA Manual") at 7-2; *Ireland v. Shearin*, 417 Md. 401, 412 n.8 (2010).

6.      Judicial Review

If an agency denies a request to inspect or copy a public record, the requestor may seek judicial review of that decision in a circuit court. GP §4-362(a).[10] In such an action, the agency has the burden of sustaining its decision. GP §4-362(b). To facilitate its review, the circuit court may require the agency to submit a listing of the withheld records and the basis for withholding each record, sometimes referred to as a "Vaughn index." *Cranford*

---

[10] If the agency is subject to the State Administrative Procedure Act, a requestor also has the option to first seek administrative review of a custodian's decision to deny access to records. GP §4-361.

Subsequent to the events that underlie this appeal, the General Assembly created two other administrative vehicles for resolving disputes over PIA requests. The position of Public Access Ombudsman was established to mediate disputes over access to public records. GP §4-1B-01 *et seq.* In addition, the State Public Information Act Compliance Board is now available to decide a complaint that a custodian is charging an unreasonable fee. GP §4-1A-01 *et seq.* The law creating both of these administrative review options became effective on October 1, 2015, several months after litigation concluded in the Circuit Court below. *See* Chapters 135, 136, Laws of Maryland 2015.

*v. Montgomery County*, 300 Md. 759, 778-79 (1984).[11]  The court also may choose to review the withheld records directly and order the agency to submit them for *in camera* inspection.  GP §4-362(c)(2).

The circuit court may order injunctive relief against the agency – for example, order the agency to produce a record that was withheld from the requestor.  GP §4-362(c)(3).  At the time of the trial of this case, a court could also award actual damages against the agency if the court found by "clear and convincing evidence" that the agency "knowingly and willfully" failed to disclose a record in accordance with the PIA.  GP §4-362(d).[12]  If the requestor substantially prevails in the action, the court may assess reasonable attorney's fees and costs against the agency.  GP §4-362(f).[13]

## B.      *Factual Background and Procedural History*

The record, as best we can determine,[14] reveals the following.

---

[11]A "Vaughn index" is a "list of documents in [the government's] possession, setting forth the date, author, general subject matter, and claim of privilege for each document claimed to be exempt from [disclosure]."  *Office of State Prosecutor v. Judicial Watch*, 356 Md. 118, 122 n.1 (1999).  The name is derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[12] The PIA has since been amended to also provide for an award of "statutory damages" up to $1,000.  In addition, the "clear and convincing evidence" standard was dropped from the statute.  Chapters 135, 136, Laws of Maryland 2015.

[13] If the court finds that the agency's custodian of records acted "arbitrarily or capriciously" in withholding records, it is to send a certified copy of that finding to the appointing authority of the custodian for possible disciplinary action.  GP §4-362(e).

[14] As the Court of Special Appeals noted in its opinion in this case, the Record Extract in this case lacks key documents pertinent to the issues on appeal and "spans over

10

1. The Traffic Stop

The bare essentials of the precipitating event – a traffic stop – are undisputed. While driving on September 14, 2010, Mr. Glass was stopped and detained by Officer Mark Collier of the Anne Arundel County Police Department, who was off duty at that time. Officer Collier issued a traffic citation to Mr. Glass for following too closely. As a result of that encounter, Mr. Glass immediately filed a complaint against Officer Collier with the Police Department. The Police Department's Internal Affairs Division launched an investigation. The incident also resulted in several successive PIA requests by Mr. Glass to the Police Department. At least two of those PIA requests spawned lawsuits.[15]

---

500 pages, has no table of contents, and follows no logical order." The copy of the Record Extract provided to us is missing random pages and fails to include the Circuit Court docket entries, as required by Maryland Rule 8-501(c). Other items from the record that should appear in the Record Extract are contained in two lengthy appendices to the briefs filed in the Court of Special Appeals. This is a litigant living dangerously, flirting with dismissal of the appeal under Maryland Rule 8-602(a)(8).

[15] We were informed at oral argument that Mr. Glass has actually instituted seven related lawsuits under the PIA. Mr. Glass also commenced other litigation against the County and Officer Collier related to the traffic stop. *See, e.g., Glass v. Anne Arundel County*, 38 F. Supp. 3d 705 (D. Md. 2014) (granting partial summary judgment in favor of Officer Collier with respect to Mr. Glass' claims under 18 U.S.C. §1983); *Glass v. Anne Arundel County*, 2017 WL 203379 (4th Cir. 2017) (dismissing Mr. Glass' appeal of trial court's award of judgment as a matter of law in favor of Officer Collier). At the trial of this case, Mr. Glass testified that he had also filed complaints with the Attorney Grievance Commission concerning an Assistant County Attorney and an Assistant State's Attorney involved in these cases and a complaint with the Commission on Judicial Disabilities concerning one of the judges in his cases.

2.      2011 PIA Request

On March 18, 2011, Mr. Glass submitted a PIA request to the Police Department, seeking "all records" from the date of the traffic stop to the date of the request "that refer to or pertain to Gary A. Glass ... " ("2011 PIA Request").[16] He specifically sought Officer Collier's "logbook and notes," records of calls made to and from Officer Collier's cell phone, and, most importantly for our purposes, "all internal affairs files on [the] investigation into Mark Collier's conduct" during the traffic stop ("IA File").

Apparently, some of the records described in the 2011 PIA Request did not exist and some had already been provided to Mr. Glass. In a letter to Mr. Glass dated April 14, 2011, Brenda D. Fraser, the Acting Records Manager for the Police Department, explained that his request for Officer Collier's IA File was being denied under the personnel records exception in the PIA. She noted that, because the IA File was created as part of an investigation of alleged employee misconduct, it was deemed a personnel record. Citing the statutory exception for personnel records, she informed Mr. Glass that the file could not be disclosed under the PIA without a court order. Finally, she advised Mr. Glass of his right, pursuant to the PIA, to seek judicial review of the denial of access.

---

[16] Mr. Glass had made an earlier PIA request shortly after the incident. The Police Department had provided certain records responsive to that request, but had denied his request for a copy of a recorded interview of him in connection with his internal affairs complaint. That PIA request is not at issue in this appeal.

3.  2011 PIA Lawsuit

A few weeks later, on May 4, 2011, Mr. Glass filed suit against the County in the Circuit Court for Anne Arundel County, naming the County, the Police Department, the Police Chief, and the County Attorney as defendants and alleging violations of the PIA. On December 22, 2011, the Circuit Court granted summary judgment in favor of the defendants and explained its reasoning in a written opinion. The court upheld the Police Department's decision to withhold Officer Collier's IA File, citing the personnel records exception and relying on this Court's then-recent decision in *Montgomery County v. Shropshire*, 420 Md. 362 (2011).[17] The court rejected Mr. Glass' unsupported contentions that the Police Department had not been truthful in reporting the results of its search for records in response to his request. Mr. Glass appealed and the Court of Special Appeals affirmed the Circuit Court's decision in an unreported opinion on May 28, 2013. This Court denied his petition for a writ of *certiorari*. 435 Md. 268 (2013).

4.  Disposition of the Traffic Citation

In the meantime, the traffic citation that Officer Collier had issued to Mr. Glass had been litigated in the District Court of Maryland sitting in Anne Arundel County. Mr. Glass was acquitted at the trial of that case in November 2011. The details of that case are not germane to the issues before us. However, we note that, as part of discovery in that case, Mr. Glass obtained some of the requested records from the IA File after an *in camera*

---

[17] See Part II.B.3 of this opinion below for a description of the *Shropshire* case.

13

review of the file by the District Court judge under a procedure that treated that file as an otherwise privileged personnel record.[18]

5.     2012 PIA Request

On February 22, 2012 – two months after the Circuit Court had upheld the Police Department's withholding of the IA File, but before the resolution of the appeal of that decision – Mr. Glass submitted another PIA request to the Police Department ("2012 PIA Request").  This time, Mr. Glass requested "[a]ny and all records of the police department . . . on Gary A. Glass" without any temporal limitation[19] and without specifically requesting the IA File.  Mr. Glass indicated on the form that he was willing to pay fees in connection with the request "with prior notification."

In response, Christine Ryder, the Police Records Manager, surveyed everyone in the Police Department by email.  She responded to Mr. Glass in a letter dated March 21, 2012.  First, Ms. Ryder alluded to a conversation between Mr. Glass and an Assistant County Attorney and stated that she would "not address grants and denials previously made."  Ms. Ryder then listed a number of records that were responsive to the 2012 PIA

---

[18] *See Baltimore City Police Department v. State*, 158 Md. App. 274 (2004) (describing procedure for *in camera* review of law enforcement officer's personnel file to determine what, if any, portion of it should be made available to a defendant in a criminal case).

[19] According to Mr. Glass' testimony at trial, he personally delivered the request to the Police Department.  When a clerk asked if he was looking for records within a specific date range, he declined to provide one.

Request.[20] Of the listed records, Ms. Ryder indicated that the Police Department would withhold one file consisting of five confidential attorney-client communications – described as a "PIA file maintained by the department's Records Manager" – based on the exception for records covered by attorney-client privilege. She stated that the Police Department would provide copies of the other responsive records, totaling 46 pages, upon the payment by Mr. Glass of $11.50 in accordance with the Police Department's fee schedule.

In her letter, Ms. Ryder also informed Mr. Glass that she had asked the County's Office of Information Technology ("OIT") to search for archived email that might be responsive to his request for Police Department records, but she had not yet received the results of that inquiry. (Although not part of her letter, testimony at the trial indicated that the Police Department's policy at that time was to store emails on the department's computers for 90 days, after which they were archived with OIT.)

Ms. Ryder also noted that the Police Department might have other records responsive to his request that were not indexed under his name and therefore had not been located. She solicited his assistance in providing any information that would help locate such records. Finally, she advised Mr. Glass that he could seek judicial review under the PIA of the denial of the records covered by attorney-client privilege.

---

[20] Officer Collier's IA File was not included in this list, presumably because it had been a subject of the 2011 PIA Request and therefore fell within the category of "grants and denials previously made."

On March 28, 2012, Mr. Glass responded to Ms. Ryder's letter. He provided the names of 11 members of the Police Department whom he believed could have records "that pertain to me or to the incident on September 14, 2010 involving Officer Mark Collier and myself." The list included Officer Collier, the Police Chief, and members of the department's Internal Affairs Division, among others. Mr. Glass also listed the names of three commanders of various units of the department whom he believed could help locate electronic communications involving the other employees.

Ms. Ryder contacted each of the individuals named in Mr. Glass' letter who still worked for the Police Department to double check whether they had records pertaining to Mr. Glass. In a response to Mr. Glass dated May 9, 2012, Ms. Ryder stated that her further inquiry based on the names Mr. Glass had listed had turned up one additional record (a "stored communication log") that she provided to Mr. Glass at no charge.

In that letter Ms. Ryder also reported the results of the search for archived email conducted by OIT. She stated that a search using the keyword "Glass" produced approximately 7,500 emails, and a second search using the keyword phrase "Gary Glass" narrowed that result to approximately 1,000 emails. She stated that the individual emails, however, would need to be inspected for attorney-client privilege before release. Ms. Ryder estimated that it would take 250 hours to review 7,500 emails, which she estimated would result in a fee of $4,960 for the search and review time. Alternatively, she estimated that it would take 33 hours to review 1,000 emails, which would result in an estimated fee of $620. She asked Mr. Glass to let her know how he wished her to proceed. Although

16

the letter itself did not request pre-payment of the estimated fee as a condition of proceeding with a review of the emails for privileged material, it is apparently undisputed that, if Mr. Glass had asked Ms. Ryder to proceed with one of the two options she offered, the County would have required pre-payment to undertake the review.

Mr. Glass did not respond directly to Ms. Ryder's request for further direction, but two weeks later sent a letter dated May 23, 2012 to the County Attorney, complaining that Ms. Ryder's response did not comply with the PIA. Among other things, Mr. Glass stated his view that many of the 1,000 archived emails that contained the phrase "Gary Glass" were likely created by Ms. Ryder herself when she broadcast his 2012 PIA Request to the entire Police Department in her effort to find records responsive to that request. Mr. Glass expressed the view that OIT ought to be able to segregate such emails and thereby reduce the need to review them for privileged material. More broadly, he asserted that "[t]here is no reason why there would be attorney-client privilege in any of those records of Ms. Ryder's search." He asked the County Attorney to advise Ms. Ryder to conduct the search and review of the emails as Mr. Glass suggested and provide a new estimate of the number of emails requiring review for attorney-client privilege. He also requested that the County waive any fees related to his request. The County Attorney replied in a brief letter dated May 31, 2012 that opined, without elaboration, that Ms. Ryder's response to Mr. Glass's PIA request had been a "reasonable response . . . consistent with state law."

6. 2012 PIA Lawsuit

Mr. Glass apparently decided not to proceed further with Ms. Ryder or the County Attorney and, instead, a couple weeks later, on June 19, 2012, filed another lawsuit against the County under the PIA in the Circuit Court for Anne Arundel County.[21] In the complaint, Mr. Glass made various general allegations that the County had violated the PIA in its response to his 2012 PIA Request, including failing to conduct a search reasonably calculated to discover responsive records, failing to comply with time limitations, charging an unreasonable fee, and failing to grant him a fee waiver. The specific factual allegations of the complaint focused on his traffic encounter with Officer Collier and the suggestion by Mr. Glass that the search of archived emails be conducted in a way that avoided emails seeking responses to his prior PIA requests. He asked the Circuit Court to order the County to produce a Vaughn index of the archived emails containing the phrase "Gary Glass," to isolate those emails related to attorney-client communications and Ms. Ryder's search in response to Mr. Glass's PIA requests, and to release all other emails to Mr. Glass. He also asked the court to order the County to waive any fees associated with its response to his PIA request and to pay him actual damages for its failure to provide the records. Finally, he asked for an award of attorney's fees and costs.

---

[21] Mr. Glass also named Ms. Ryder and the Police Chief as defendants. The County Attorney's Office appeared on behalf of all of the defendants, filing an answer on behalf of the County and Ms. Ryder and a motion to dismiss on behalf of the Police Chief; the motion to dismiss the Police Chief was granted on September 26, 2012. In this opinion we shall refer to the defendants collectively as the County.

7. **2013 PIA Request, Second IA Complaint, and Amended Court Complaint**

While he was litigating the County's response to the 2012 PIA Request in the Circuit Court and its response to the 2011 PIA Request in the Court of Special Appeals, Mr. Glass submitted another PIA request to the County Executive and Police Chief on February 20, 2013 ("2013 PIA Request"). The 2013 PIA Request sought any records pertaining to him in the custody of the Police Department that were compiled from February 23, 2012 – the day after his 2012 PIA Request – to the date of 2013 PIA Request. In the 2013 PIA Request, he gave some direction to the County on how to conduct the search for records. Among other things, he stressed that he wanted only pre-existing records, not records created as part of the searches in response to his prior PIA requests, specified certain regional and national law enforcement databases he wished to be searched, and requested a waiver of any fees.

In a letter dated March 7, 2013, Ms. Ryder advised Mr. Glass that she had forwarded his latest request to OIT to conduct an additional search for archived emails, reported that no responsive records were found in searches of certain County databases, stated that she was unable to do a keyword search of one electronic database but offered to undertake a manual search, and advised Mr. Glass to submit separate record requests to State and federal agencies with respect to other databases not under the County's control. She estimated the fee for the manual search of the remaining database to be $2,560, declined to waive that fee, but suggested that Mr. Glass could refine the date ranges and individual users to be searched on that database in order to reduce the cost of the search.

19

Mr. Glass promptly amended the complaint in his 2012 PIA Lawsuit to assert that the County's response to his 2013 PIA Request violated the PIA. The amended complaint also noted that he had made a second complaint to the Police Department concerning Officer Collier's conduct after the trial of his traffic case in the District Court. In the amended complaint he asserted that the County had failed to disclose or properly claim an exception with respect to the IA File as it pertained to his second complaint against Officer Collier.[22]

8.      Circuit Court Rulings in 2012 PIA Lawsuit

After filing the 2012 PIA Lawsuit, Mr. Glass pursued discovery against the County in that case and filed numerous motions over the next two years, which were decided by various judges of the Circuit Court. We focus here on the proceedings and rulings pertinent to the particular issues before us.

*Archived emails*

As a result of discovery in the case, Mr. Glass learned that the results of the initial archived email search by OIT were contained on a USB memory stick. On December 12, 2012, he asked the Circuit Court to compel the County to produce the USB memory stick in the 2012 PIA Lawsuit under the civil discovery rules. On January 18, 2013, the Circuit

---

[22] Later in 2013, Mr. Glass sought leave to file a second amended complaint in the 2012 PIA Lawsuit that named an officer of the Internal Affairs Division as a defendant and that included various allegations related to the investigation of his IA complaints. On December 20, 2013, the Circuit Court denied leave to file that amended complaint.

20

Court granted Mr. Glass' motion and ordered the County to produce all non-privileged documents contained on the USB memory stick within 10 days, and a privilege log as to any emails that the County withheld. Although the Circuit Court did not purport to be resolving the merits of the 2012 PIA Lawsuit with respect to the emails, the effect of this order was to grant Mr. Glass some of the relief that he sought – *i.e.*, it compelled the County to carry out the proposal made in Ms. Ryder's May 9, 2012 letter without requiring Mr. Glass to pay the fees associated with the review of the emails, thus effectively granting him the email production and fee waiver he had sought in his complaint.

During February 2013, the County undertook a review of the emails on the USB memory stick and eventually provided Mr. Glass with thousands of emails from the USB memory stick, but withheld some emails under a claim of privilege. Apparently, all of the emails on the USB memory stick bore dates after November 2011. Shortly thereafter, Mr. Glass filed a number of motions, among which was a request that the Circuit Court award him summary judgment on the ground that the County had violated the PIA in its search for and disclosure of emails. After considering an opposing memorandum and affidavit filed by the County, a second judge of the Circuit Court denied that motion.

On August 15, 2013, Mr. Glass again moved for partial summary judgment as to whether the County had violated the PIA with respect to disclosure of emails dated prior to November 2011. At a hearing on January 23, 2014, a third judge of the Circuit Court

held that the County[23] had violated the PIA and awarded partial summary judgment in favor of Mr. Glass on that motion. The Circuit Court did not provide an oral or written opinion explaining its reasoning.[24] It ordered the County to produce to Mr. Glass within 30 days all emails for the period from September 14, 2010 through November 2011 that related to the traffic stop or that pertained to Mr. Glass, except for any emails that fell within an exception to the PIA's general principle of disclosure, and ordered the County to identify any pertinent exception.

Further sparring ensued in the Circuit Court concerning the adequacy of the County's subsequent email searches, and the court ordered the County to perform certain

---

[23] In its brief, in which it takes some pains at various points to distinguish "the Custodian" from "the County," the County states that the Circuit Court found that "the Custodian" – Ms. Ryder – had violated the PIA. In fact, the court order referred to "the Defendants" and, in any event, Ms. Ryder acted on behalf of the County.

[24] At the time it entered the order in Mr. Glass' favor, the judge appeared to treat the motion for partial summary judgment as unopposed after she had decided to exclude an affidavit of Ms. Ryder submitted by the County. The judge excluded the affidavit because, although Ms. Ryder made it under penalties of perjury and recounted her own actions in response to the PIA requests, the introductory clause of the affidavit recited that it was "true to the best of my information, knowledge, and belief." *See County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 101-04 (2000) (affidavits related to summary judgment motion should be based on personal knowledge). As noted above, a different judge of the Circuit Court had earlier denied a similar summary judgment motion by Mr. Glass after the County opposed that motion based on the same affidavit. Although the merits of excluding the Ryder affidavit are not before us, we note that affidavits concerning records searches in FOIA cases are often made by the agency employee who supervised the search, even if that individual did not conduct all aspects of the search. *See, e.g., Carney v. Department of Justice*, 19 F.3d 807, 814 (2d Cir. 1994) (in the context of a summary judgment motion in a FOIA case, "there is no need for the agency to supply affidavits from each individual who participated in the actual search").

searches based on specific key words, which led to the discovery of additional responsive archived emails, some of which the County withheld as privileged. The court also conducted an *in camera* review of the emails listed on the privilege log and ordered that some of them should be provided to Mr. Glass. Although the court had initially granted partial summary judgment in favor of Mr. Glass and ordered the additional searches and disclosures, it ultimately declined to order any additional searches and made an explicit finding at a hearing on April 22, 2014 that the County's searches for archived emails had been reasonable.

A bench trial was held in January 2015 before a fourth judge of the Circuit Court. The issues at trial concerned whether the violations of the PIA by the County previously determined by the Circuit Court were knowing and willful, and would thus entitle Mr. Glass to an award of actual damages under GP §4-362(d). Mr. Glass also sought to have the Circuit Court order the County undertake additional searches as a remedy, as well as to pay his attorney's fees and costs. At the conclusion of the trial, the judge stated that she intended to focus on whether the PIA violations that were the subject of the earlier summary judgment were knowing and willful, and that she would not revisit the basis on which such violations were determined.[25]

_____

[25] The trial judge stated that "I'm presuming that [the judge who awarded summary judgment] made all relevant factual findings as to what aspects of the Public Information Act were violated so that we don't have to in any way address that." As noted earlier, at

23

In a memorandum opinion issued on April 8, 2015, the Circuit Court concluded that the County knowingly and willfully violated the PIA in failing to conduct an adequate search for the emails requested by Mr. Glass. The court based that conclusion on the fact that the County had not retrieved emails for dates prior to November 2011 until it did so in response to orders issued during litigation of the 2012 PIA Lawsuit.

*Officer Collier's IA File*

In the complaint that initiated his 2012 PIA lawsuit, Mr. Glass had not alleged that the County had violated the PIA by failing to disclose Officer Collier's IA File in response to his 2012 PIA Request. This is not surprising as the IA File was the subject of his 2011 PIA Request and of the previous lawsuit he had filed based on that request. As recounted above, the Circuit Court had upheld the County's denial of the IA file – a decision that was ultimately affirmed by the Court of Special Appeals in May 2013.

After the Circuit Court had held that the County had properly withheld the IA File in response to the 2011 PIA Request, but before the Court of Special Appeals had affirmed that decision, Mr. Glass amended his complaint in the 2012 PIA Lawsuit. The amendments added allegations related to his second internal affairs complaint about Officer Collier and asked the Court to order the County to provide a Vaughn index of materials in the IA File. In a motion for summary judgment filed the same day, Mr. Glass argued that the County

the time the court awarded summary judgment in favor of Mr. Glass with respect to the archived emails and IA File, it did not make fact findings or explain its reasoning.

24

violated the PIA when it did not address the IA File in its response to his 2012 PIA Request. Noting that the Circuit Court's ruling against Mr. Glass with respect to his 2011 PIA Request for the contents of the IA File was on appeal, the County assured the Circuit Court that, if the Court of Special Appeals eventually directed the County to release the IA File, it would do so.

As noted above, Mr. Glass had obtained some documents from the IA File when the District Court conducted an *in camera* review of that file in connection with the District Court trial of his traffic citation.

On June 19, 2013, in response to a motion by Mr. Glass in the 2012 PIA Lawsuit, the Circuit Court ordered the County to provide Mr. Glass with a Vaughn index of records placed in the IA File *subsequent to* the ruling in the 2011 PIA Lawsuit.[26] At a hearing on January 23, 2014, before a different judge of the Circuit Court, the court granted Mr. Glass' request for reconsideration and ordered the County to also provide a Vaughn index of material placed in the IA File *prior to* the ruling in the 2011 PIA Lawsuit. At the same time, the court awarded partial summary judgment in favor of Mr. Glass with respect to the IA File, declared that the County had violated the PIA by failing to provide severable materials from that file, ordered the County to release such materials, and ordered the

---

[26] The Circuit Court did not provide an opinion explaining its reasoning. It appears to have regarded the December 2011 ruling in the 2011 PIA Lawsuit that the IA File was a personnel record as *res judicata* as to records in the file at that time, but not as to records subsequently placed in the IA File.

County to waive any fees. The Circuit Court instructed the County to make "necessary redactions of the names and identifying information of personnel and witnesses, and redactions of information that is attorney-client privileged or attorney work product." The court did not provide an opinion, either oral or written, explaining the reasoning for its ruling.[27] It is notable that, in requesting that ruling, Mr. Glass relied on this Court's then-recent decision in *Maryland State Police v. NAACP Branches*, 430 Md. 179 (2013), which concerned a PIA request for severable portions of complaints made to the Maryland State Police about troopers. In doing so, he pointed out that the Circuit Court's prior ruling denying him access to the IA File had preceded *NAACP Branches*.[28]

Following the bench trial in January 2015 before a different judge of the Circuit Court, the court elaborated on the issues concerning the IA File in its memorandum opinion. In its opinion, the Circuit Court concluded that the County did not knowingly and willfully violate the PIA when it withheld records from the IA File because the County did so in the belief that the IA File was a personnel record and that the PIA forbade disclosure of its contents. The Circuit Court noted that, when Ms. Ryder initially responded to the 2012 Request, the Circuit Court had already upheld the County's decision to deny access

---

[27] As with Mr. Glass' partial summary judgment motion regarding archived email, it appears from the transcript that the court treated this motion as unopposed, in light of its exclusion of an affidavit submitted by the County as part of the County's opposition to the motion. *See* footnote 24 above.

[28] *See* Part II.B.3 of this opinion below for a description of the *NAACP Branches* opinion.

26

to the IA File in response to the 2011 PIA Request. The court noted that the court's order in January 2014 requiring release of severable material was likely based on its understanding of the effect of the *NAACP Branches* decision, which had been issued after the County's response to the 2012 PIA Request. Accordingly, the Circuit Court reasoned, there was not clear and convincing evidence that the County violated a known legal duty under the PIA when it withheld the IA File.

*Records from Police Chief's Office*

As noted above, Mr. Glass responded to Ms. Ryder's suggestion that he provide guidance on where she might find records responsive to his 2012 PIA Request by listing 11 members of the Police Department whom he believed had records responsive to that request. Among those individuals was the then-incumbent Police Chief.

On October 30, 2014, Mr. Glass moved for partial summary judgment on the basis that the County had failed to disclose records from the Police Chief's office. Mr. Glass pointed to a letter sent on August 25, 2011 by the Police Chief to the State's Attorney, requesting assignment of a prosecutor with respect to Mr. Glass' traffic citation concerning the September 14, 2010 traffic stop.[29] Mr. Glass pointed out that this letter likely still

---

[29] Mr. Glass apparently obtained a copy of this letter from the State's Attorney's Office. In the letter, the Police Chief refers to the fact that Mr. Glass had subpoenaed various County officials and police employees to appear at the trial of the traffic case, that the legal issues had exceeded the capability of the officer who had issued the citation, and that, at a motions hearing in the case, the trial judge had requested the participation of an Assistant State's Attorney at the trial.

existed at the time of his 2012 PIA Request and that, because it referenced Mr. Glass, was responsive to that request, but had not been provided by the County in response to that request.

Mr. Glass also relied on a discovery deposition of Ms. Ryder. In that deposition, she stated that she was aware that most of the Police Chief's records were indexed chronologically rather than by name, but admitted that she had not given the Police Chief's assistant any guidance on what time frames to search and that, to her knowledge, the Police Chief's assistant did not perform any additional searches of records in the Police Chief's office.

Opposing this motion, the County pointed to two emails. In the first, dated March 6, 2012, Ms. Ryder asked the Police Chief's assistant about obtaining, in response to the 2012 PIA Request, (1) any correspondence sent by Mr. Glass to the Police Chief and (2) any notes of calls made by Mr. Glass to the Police Chief's office. In the second email, dated April 10, 2012, the Police Chief told his assistant (apparently in response to an inquiry about records responsive to the 2012 PIA Request), that he personally did not possess any responsive records, but inquired whether she knew "of any records in our files." This evidence, the County argued, showed that summary judgment was inappropriate. On January 18, 2015, the Circuit Court denied the motion.

At the bench trial held the following week, Ms. Ryder again testified about her efforts to obtain any responsive records located in the Police Chief's office. She described how the Police Chief's assistant told her that, because of the predominantly chronological

28

filing system, it would take "forever" to complete a search of those files without a specific date range and offered to search further, if a date range were specified.

In its memorandum opinion following the bench trial, the Circuit Court found that the County's efforts to obtain responsive records from the Police Chief's office beyond the search of records filed by name were inadequate, and that this constituted a knowing and willful violation of the PIA. The Circuit Court reasoned that Ms. Ryder knew that the files in the Police Chief's office were organized chronologically, but that she had failed to provide the Police Chief's secretary with "a relevant date range" and the search was thus limited to a few records filed by name.

*Remedial Search Issue*

As noted earlier, at the bench trial in January 2015, Mr. Glass asked the Circuit Court to award him damages, to order the County to conduct "remedial searches," and to award him attorney's fees and costs. With respect to his request for remedial searches, Mr. Glass asked the court to order the County to conduct a search of all of its computer files, including back up tapes, as well as all word processing files, among other things.

The Circuit Court found that Mr. Glass had not established actual damages and declined to award any.[30] Nor did the court order any additional searches by the County. It deferred assessment of attorney's fees and costs to a later hearing.

---

[30] Mr. Glass had claimed that the County's response to the 2012 PIA Request had caused him severe emotional injury, stress, anxiety, sleep disruption, weight gain, loss of potential income, and damage to personal relationships. The court found that he had not

9.    Second Appeal to the Court of Special Appeals

Mr. Glass appealed the Circuit Court's decision, raising a number of issues about the conduct of the trial, the Circuit Court's findings, and the remedies he believed it should have ordered. Mr. Glass challenged, among other things, the Circuit Court's conclusion that the County's refusal to disclose records from the IA File was not a knowing and willful violation of the PIA. The County cross-appealed, challenging the Circuit Court's conclusions that the County had knowingly and willfully violated the PIA with respect to its searches for archived emails dated prior to November 2011 and for records in the Police Chief's office. In its cross-appeal, the County also argued that the County had not violated the PIA when it had declined to provide records from Officer Collier's IA File.

In an unreported opinion issued on March 9, 2016, the Court of Special Appeals affirmed a number of decisions of the Circuit Court related to the trial, but concluded that the Circuit Court had erred in holding that the County had knowingly and willfully violated the PIA. As a result, it considered the issues concerning remedies for such violations to be moot. The court also held that the Circuit Court was not clearly erroneous when it declined to order injunctive relief in the form of follow-up or "remedial" searches.

Mr. Glass petitioned this Court for a writ of *certiorari*, which we granted.

---

established a credible link between his alleged damages and the County's response to the PIA request. The damages issue is not before us in this appeal.

## II

## Discussion

In some respects, there is less at stake here than appears at first glance. In a typical case of judicial review of an agency response to a PIA request, the court must resolve whether the requestor gets access to the records in question. In this case, Mr. Glass has had access, for the most part, to many of the records he sought. Rather, the chief issue before us is whether there is clear and convincing evidence that the County's response to his 2012 PIA Request was a knowing and willful violation of the PIA and whether Mr. Glass is entitled to the "remedial searches" that he seeks.[31] Mr. Glass argues that the Court of Special Appeals erred in answering those questions "no" and focuses on the County's search as to three categories of records – the archived emails, the IA File, and records in the Police Chief's office.

We agree with the Court of Special Appeals that the record in this case does not disclose evidence of a violation of the PIA, much less clear and convincing evidence of a knowing and willful one. Moreover, we agree with the Circuit Court and the Court of Special Appeals that Mr. Glass is not entitled to injunctive relief in the form of follow-up or "remedial" searches.

---

[31] As noted above, the issue of whether the Circuit Court should have awarded damages is not before us.

### A.    Standard of Review

As recounted above, the Circuit Court awarded summary judgment in favor of Mr. Glass with respect to certain categories of records. Given that summary judgment turns on a determination of law rather than fact, we review such a determination without deference to the Circuit Court. *Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 598 (2013). The bench trial conducted by the Circuit Court concerned whether those violations could be characterized as "knowing and willful" and, if so, whether Mr. Glass was entitled to damages and an order directing further record searches by the County. When a matter is tried by a court without a jury, an appellate court reviews the case on both the law and the evidence. Maryland Rule 8-131(c). The trial court's judgment on the evidence is not to be set aside unless clearly erroneous. *Id.* However, no deference is owed to its assessment of the law. *Tribbitt v. State*, 403 Md. 638, 644 (2008).

### B.    Whether the County Violated the PIA

#### 1.    The Requirement of a Reasonable Search

Much of this case turns on the adequacy of the County's response to the 2012 PIA Request, particularly the breadth of its search for certain records. We begin with a few words on what kind of search the PIA requires.

An agency that receives a PIA request must conduct a search in good faith that is reasonably designed to capture all responsive records. In cases under FOIA, the federal courts have characterized such a search as "a good faith effort to conduct a search for the

requested records, using methods that can be reasonably expected to produce the information requested." *Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). This does not mean that the agency must robotically examine every record in its possession, running up an extravagant fee and diverting public resources in furtherance of a futile effort; rather, the search should be focused on where responsive records are likely to be found.

The reasonableness of an agency's search is to be measured prospectively by how the agency designed the effort to find responsive records, not retrospectively by its success in locating every responsive record. A search may be reasonable and adequate without being perfect. *See, e.g., Ethyl Corp. v. EPA*, 25 F.3d 1241, 1246 (4th Cir. 1994) (whether search is reasonable is not assessed by "whether every single potentially responsive document has been unearthed").

It is often true that a requestor is at a disadvantage in formulating a PIA request because the requestor does not know what records the agency keeps or how it keeps them. It is part of every agency's mission to be as transparent as the State's sunshine laws, including the PIA, require it to be. A public records request is not an occasion for a game of hide and seek. For that reason, if possible, an agency should in good faith provide some reasonable assistance to the requestor in refining the request for the records the requestor seeks. Of course, nothing requires the requestor to accept such assistance.

It is also sometimes the case that a requestor, suspicious of the particular agency or of government in general, submits a broadly-worded request, intending to afford the agency

no excuse for not producing for the records the requestor really wants.  Literal compliance with such a request, however, would often require such a diversion of resources and agency time as to amount to a huge expense.  In practice, a productive response to a PIA request is often an iterative process in which the agency reports on the type and scope of the files it holds that may include responsive records, and the requestor refines the request to reduce the labor (and expense) of searching those records.  When the requestor and agency work together, the process approximates the purpose and policy of the PIA.  When they do not, what results is the requestor insisting on what, to the agency, is an unbounded and unreasonable search and the agency insisting on what, to the requestor, is an unbounded and unreasonable fee.

In the end, what the PIA requires is a *reasonable* search designed to locate all records responsive to the particular PIA request, not a perfect search that leaves no stone unturned.  Reasonableness must be measured against the specificity of the request and the willingness of the requestor to focus a request to improve the efficiency of the search.  An agency is not expected to divert its resources to an exhaustive search in response to a broadly worded request that the requester refuses to focus and at an expense that will not be recovered.

2.    The Archived Emails

As noted above, the Circuit Court concluded, in its memorandum opinion following the January 2015 trial, that the County had knowingly and willfully violated the PIA with respect to the archived emails by failing to adequately search for and provide emails for

the period prior to November 2011 until it carried out additional searches in response to court orders during the litigation. On appeal, the Court of Special Appeals reversed that holding and concluded that the county had not violated the PIA on the alternative grounds that: (1) because the archived emails were stored with OIT, those emails were no longer "within the custody and control" of Ms. Ryder and the Police Department, and (2) Ms. Ryder had never actually denied access to any archived emails to Mr. Glass, but rather had requested direction from him as to which emails to review and a fee for that review and production.

We agree with the Court of Special Appeals on the bottom line, but disagree with part of its reasoning. In our view, the archived emails remained "within the custody and control" of Ms. Ryder and the Police Department even after they were stored with OIT. Therefore, under the PIA, Ms. Ryder had an obligation to produce the archived emails in response to the 2012 PIA Request to the extent they were subject to inspection under the PIA. However, we agree with the Court of Specials Appeals that there was no *denial* of access to the emails – as opposed to a dispute over the conditions of access – that amounted to a violation of the County's obligations under the statute.

*Who is the Custodian of the Archived Emails?*

The County does not dispute that Ms. Ryder, as the records manager for the Police Department, was the designated custodian of its records for purposes of responding to the 2012 PIA Request. However, it refers to the Police Department's archived email as "discarded records" now in the custody of another agency. The County argues that Ms.

Ryder was not a custodian of the archived emails stored at OIT and that her efforts with respect to the emails were undertaken merely as a courtesy to Mr. Glass.

Ms. Ryder's own actions belie that argument. In her initial response to the 2012 PIA Request, she advised Mr. Glass that she had asked OIT to search archived emails as part of the Police Department's response to his request. Her follow-up letter reported the results of that search and estimated the fees for the Police Department to review the emails for privileged material. In neither instance did she assert that the records belonged to OIT as opposed to the Police Department, nor did she re-direct Mr. Glass' request to OIT, as she would be required to do under GP §4-202(c) if someone at OIT were the appropriate custodian. In short, Ms. Ryder acted as the PIA requires a custodian of these records to act: she timely responded to the PIA request, took responsibility for reviewing the records and asserting exceptions, and estimated a fee for that review.

There is no question that Ms. Ryder and the Police Department were limited somewhat in their ability to access the archived emails. Although the archived emails were not in Ms. Ryder's immediate physical custody and she needed the assistance of another County department – OIT – to access them, this apparently was no high hurdle. The OIT employee who performed the archived email search testified that "basically everybody in the County" stored electronic records and information with OIT and that requests for searches of archived email by County agencies were not unusual. Moreover, nothing indicates that OIT had the authority or – more importantly – the *ability* to make decisions concerning inspection of the records. As noted above, the PIA requires custodians to

withhold certain categories of records, decide whether privileges apply and should be asserted, and make decisions as to whether some types of records should be withheld in the public interest. The County does not assert that OIT can make those decisions as to archived emails of the Police Department, nor is it self-evident that an agency primarily responsible for information technology would be able to do so.

A custodian is not relieved of responsibilities under the PIA merely because the requested records are not at the custodian's fingertips. *Ireland*, 417 Md. at 409-10. Indeed, the Maryland Attorney General has advised that "an agency's records remain 'public records' even if the agency outsources the task of maintaining them to a private contractor." PIA Manual at 1-6 to 1-7; *cf. Pleasant v. Pleasant*, 97 Md. App. 711, 732 (1993) (noting, in the discovery context, that "control is not synonymous with possession, but refers to the right, authority, or ability to obtain upon demand") (internal quotation marks and citations omitted).

The County's characterization of the archived emails as "discarded" appears to equate OIT to the County dump. But a more apt analogy would be a County warehouse. While a requestor might submit a PIA request to the supervisor of a County warehouse for access to records stored at the warehouse, inevitably that request would be forwarded to, and handled by, a custodian at the agency to whom the records belonged. The same holds true for records stored electronically.[32]

---

[32] This does not mean that an agency is required to hire a computer expert and conduct a forensic examination of its information systems to recover deleted electronic

In our view, Ms. Ryder was an appropriate custodian of the archived emails. The Police Department created those emails and apparently retained the ability to access them at OIT. When responding to the 2012 PIA request as the Police Department's designated custodian, Ms. Ryder treated them the same way she treated the files physically stored at the Police Department. And, finally, Ms. Ryder and other officials at the Police Department were responsible for making decisions about whether to release or withhold records.

*Was Access Denied to Responsive Emails Not Protected by Privilege?*

While Ms. Ryder was the designated custodian of the Police Department with responsibility for responding to the 2012 PIA Request concerning the archived emails stored with OIT, we agree with the Court of Special Appeals that there was "no actual withholding in the first place."

When Ms. Ryder reported the results of the archived email search, she provided Mr. Glass with an estimate of the fees for alternative approaches to reviewing those emails and

---

records that may be contained in computer backup files in order to respond to a PIA request. *Cf. CareToLive v. FDA*, 631 F.3d 336, 342-44 (6th Cir. 2011) (because FOIA requires only a reasonable search, agency was not required to hire information technology expert to attempt to recover deleted electronic document). All that the PIA requires is a reasonable search under the circumstances. If the agency is able – and does – access the particular records for its own purposes without extraordinary expense, it is not unreasonable for the agency to cause a similar search of those records when such a search is likely to yield records responsive to a particular PIA request.

sought further direction from him. This was consistent with the provision of the PIA that allows a custodian to charge a reasonable fee for search and review costs related to fulfilling a PIA request. GP §4-206(b). The only actual denial of access to *any* requested records appeared in Ms. Ryder's initial response and concerned other records for which she asserted attorney-client privilege. She assumed that some of the emails located by OIT might also be privileged, but told Mr. Glass that the emails had to be reviewed to determine if that was so. It was not farfetched for Ms. Ryder to be concerned that emails including the phrase "Gary Glass" might be covered by attorney-client privilege as the County remained in litigation with him over its response to his 2011 PIA Request at the time he made his 2012 PIA Request.

Mr. Glass responded by writing to the County Attorney, accusing Ms. Ryder of violating the PIA and asserting that there was no need for the County to review the emails for privileged material because "[t]here is no reason why there would be an attorney-client privilege in any of those records of Ms. Ryder's search." The County Attorney opined that Ms. Ryder had acted consistently with the PIA.

Ms. Ryder did not "deny inspection" of the archived emails in her response to the 2012 PIA Request; Mr. Glass was just dissatisfied with the estimated fee.[33] It is undisputed that, as Ms. Ryder testified at trial, at the time the 2012 PIA Lawsuit was filed, she had not

---

[33] We note that, under current law (effective October 1, 2015), Mr. Glass would have the option to contest Ms. Ryder's estimated fee with the State Public Information Act Compliance Board. GP §4-1A-01 *et seq*.

yet reviewed the emails because Mr. Glass had not yet agreed to pay for that review. She stated that "it's standard practice when there is a request and the records are so many that I won't be able to perform the other functions of my job, it is … the department's and my policy that you have to pay the County for that time." At the time she responded to the 2012 PIA Request, she was not yet aware of gaps in the search results and whether there was privileged material among the emails that had been located. Although there may have been other ways to slice and dice the emails, as Mr. Glass suggested, to reduce the time spent on review and the concomitant cost, that is not the basis on which the Circuit Court ordered production of the emails during the litigation.

In January 2013, a judge of the Circuit Court ordered the County to produce the emails on the USB memory stick and a privilege log without payment of a fee in what that judge apparently viewed as resolution of a discovery dispute, not of the merits of the PIA case.[34] In April 2013, a different judge of the Circuit Court denied Mr. Glass' motion for summary judgment as to whether the County violated the PIA because its initial search for emails did not uncover any dated prior to November 22, 2011. The next year, in January and April 2014, a third judge of the Circuit Court awarded partial summary judgment

---

[34] A discovery order in a PIA lawsuit ordering production of records sought in the underlying PIA request is dubious at best, given that disclosure of the records goes to the merits of the lawsuit. *See, e.g., Lane v. Department of Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008) (discovery properly denied in FOIA lawsuit when plaintiff was requesting in discovery "the very information that is the subject of the FOIA complaint"). However, that issue is not before us in this case.

concerning disclosure of additional archived emails – without explaining the rationale for that decision – but also made an explicit finding that the searches conducted by the County of the archived emails had been reasonable.[35]

In January 2015, when a fourth judge of the Circuit Court conducted the trial of this case, that judge assumed that the earlier rulings had resolved the question of whether a violation had occurred and focused on the issue of whether the County had acted knowingly and willfully, such that Mr. Glass would be eligible for an award of damages. In concluding that the County had acted knowingly and willfully, the court based its decision on its conclusion that the County had "fail[ed] to remedy the subsequent search after [the] court order in 2013."

The 2013 court order that the Circuit Court referenced was not a ruling on the merits of the County's response to Mr. Glass' 2012 PIA Request, but rather was a discovery order concerning the USB memory stick. Compliance with that discovery order did not require the County to undertake further searches. While it may be true that the OIT's initial search contained on the USB memory stick did not locate all emails responsive to the 2012 PIA

---

[35] The basis of the Circuit Court's 2014 order awarding summary judgment as to a violation of the statute with respect to the archived emails thus is not clear, particularly given its explicit finding that the County's email searches were reasonable. As noted earlier, it may be that the court regarded the summary judgment motion as unopposed, once it excluded Ms. Ryder's affidavit on technical grounds. However, exclusion of a party's affidavit by itself would not necessarily entitle the opposing party to summary judgment. *See Ashton v. Brown*, 339 Md. 70, 79 (1995) (even if relevant facts are undisputed, a grant of summary judgment is improper if those facts are susceptible to inferences supporting the position of the party opposing summary judgment).

Request, that hardly supports a finding of a knowing and willful violation at the time Ms. Ryder responded to the 2012 PIA Request. Ms. Ryder had not yet commenced reviewing the contents of the USB memory stick and was awaiting further direction from Mr. Glass when he filed the 2012 PIA Lawsuit asserting that she had knowingly and willfully violated the statute.[36] We do not know what would have happened if Mr. Glass had continued to negotiate the scope of search, – *e.g.*, whether the Ms. Ryder would have asked for a further search by OIT and would have found earlier emails in a timely manner.

### 3. Officer Collier's IA File

Officer Collier's IA File was a major focus of the 2011 PIA Request and ultimately became a major focus of the 2012 PIA Request. In wrestling with the question whether Mr. Glass was entitled to materials from that file, the Circuit Court issued a series of rulings, which at times appear to be contradictory. Part of the credit for this is attributable to Mr. Glass' submission of successive and overlapping PIA requests and part is

---

[36] Mr. Glass argues that the County was obligated to continue to search for records responsive to his 2012 PIA Request after he had filed suit, even though he had not committed to pay the fee related to that search and review, and cites several FOIA cases. *See Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 357, 364 (4th Cir. 2009); *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986); *PETA v. BIA*, 800 F.Supp.2d 173, 180 (D.D.C. 2011). However, those cases do not hold that an agency is obliged to continue a search after suit has been filed, but rather stand for the proposition that a post-litigation search by an agency may cure perceived inadequacies in a search conducted prior to the filing of suit. Notably, in the instant case, the judge who granted summary judgment in Mr. Glass' favor with respect to the archived emails ultimately declined to order further searches, explicitly finding that the County's searches had been reasonable.

attributable to the Circuit Court's effort to keep up with a contemporaneous series of decisions by this Court concerning the personnel records exception and police IA files.

To place the Circuit Court rulings in context we start with the recent case law concerning the PIA and IA files.

*IA Files under the PIA*

As noted earlier, among the mandatory exceptions to the PIA's general rule of disclosure is one for "a personnel record of an individual." GP §4-311. The Legislature has not defined the phrase "personnel record" in the PIA, although it has included a non-exhaustive list of examples – "an application, a performance rating, or scholastic achievement information." GP §4-311(a). This Court has concluded that the phrase encompasses records "that directly pertain to employment and an employee's ability to perform a job." *Kirwan v. The Diamondback*, 352 Md. 74, 82-84 (1998). Thus, for purposes of the PIA, "personnel record of an individual" includes any record that relates to a particular employee's "hiring, discipline, promotion, dismissal, or any matter involving his status as an employee." *Id.* The concept has been further elaborated in case law as to particular records.

In 2011, this Court considered whether records of an internal affairs investigation of a police department fell within the personnel records exception. *Montgomery County v. Shropshire*, 420 Md. 362 (2011). The Court held that "internal affairs records … related to employee discipline" of a specific, identifiable police officer are within the personnel records exception, even if the investigation cleared the officer of wrongdoing. 420 Md. at

381. This is because of the "significant public interest in maintaining confidentiality, both in fairness to the investigated officers and cooperating witnesses." *Id.*

Subsequently, the Court recognized an exception to this holding, when the requested records, even if ultimately destined to become part of an internal affairs file, could not be associated with the investigation of a particular employee. *Maryland Department of State Police v. Maryland State Conference of NAACP Branches*, 430 Md. 179 (2013). In that case, a requestor made a PIA request for various records of the State Police that related to that agency's compliance with a federal consent decree. The State Police produced many of the records requested, but declined to produce records related to complaints of racial profiling by troopers, citing the personnel records exception. The circuit court ordered that the complaints and related records should be disclosed with redaction of the names and any identification numbers of individual troopers. *Id.* at 185. This Court held that the redaction of the identifying information would remove the records from the category of "personnel record of an individual" because there would be no identifiable "individual" related to the redacted records. *Id.* at 195. The Court also relied on the direction in the PIA to permit inspection of any part of the record that is subject to inspection and is *reasonably severable*.[37] *Id.* It noted that this language "authorizes redactions so that the applicant can

---

[37] At the time of the *NAACP Branches* decision, the phrase "reasonably severable" appeared in SG §10-614(b)(3)(iii), which was later recodified in GP §4-203(c)(3). Although the recodification initially retained the "reasonably severable" language, the General Assembly eventually deleted those words from the provision. Chapters 135, 136, Laws of Maryland 2015. The law now requires a custodian to allow inspection only "of

receive portions of an exempt record which are severable and the receipt of which does not violate the substance of the exemption." *Id.*

In *Shropshire,* the Court had anticipated the *NAACP Branches* decision and distinguished the type of PIA request made in the latter case from the one before it. The Court noted that the IA records sought in *Shropshire* pertained specifically to an internal investigation of the actions of two named officers concerning their investigation of a motor vehicle accident and allegations of misconduct made against those specific officers. By contrast, the request in *NAACP Branches* sought information concerning complaints stored in the aggregate and, via redaction, without reference to any particular employee. 420 Md. at 382-83.

In a decision issued after the Circuit Court rulings in this case, this Court recently confirmed that *NAACP Branches* does not provide a rationale for disclosing records from an IA file that is readily identified to a specific officer. *Maryland State Police v. Dashiell*, 443 Md. 435 (2015). In that case, the requestor sought records pertaining to an internal investigation conducted by the Maryland State Police arising out of a complaint she had lodged against a specific officer – *i.e.,* the request encompassed the IA file of that officer. (The State Police had previously informed the requestor that her complaint had been sustained and that the officer had been disciplined.) The State Police denied access to any

---

any part of the record that is subject to inspection." This change took effect on October 1, 2015.

of the records of the internal affairs investigation, asserting the personnel records exception.

This Court held that the PIA did not allow disclosure of those records in response to a PIA request, because records related to employee discipline fell within the rubric of "personnel records." The Court reasoned that *NAACP Branches* was "inapposite, because the instant records, even were redaction possible (which is highly unlikely), would be related to a specific identified individual." 443 Md. at 458-59 (parentheses in original). The Court specifically rejected a suggestion that the circuit court should have conducted an *in camera* review and redacted identifying information, noting that the requested records remained personnel records under the PIA and "*in camera* review cannot alter that decision, nor may redaction be effective under the circumstances." *Id.* at 460. In short, because the requested records were from the IA file of a specifically-identified officer, the agency was authorized – indeed, was required – to withhold them in their entirety.

*Personnel Record Exception Applied to Officer Collier's IA File*

Mr. Glass explicitly requested Officer Collier's IA File in his 2011 PIA Request and litigated the issue of its availability under the PIA to the Court of Special Appeals. That court took into consideration both *Shropshire* and *NAACP Branches* and upheld the County's decision to deny inspection of that file.

The 2012 PIA Request, which Mr. Glass submitted within two months after he was rebuffed by the Circuit Court in his initial attempt to obtain the IA File, was more broadly worded than the 2011 PIA Request. To the extent that it encompassed Officer Collier's IA

46

File, the result should be no different from the result with respect to the earlier, more specific request. Indeed, Ms. Ryder, the custodian of police records, signaled this result when she indicated in her initial response that she would not duplicate "grants and denials previously made."

In 2014, the Circuit Court awarded summary judgment in favor of Mr. Glass and ordered the County first to provide Vaughn indexes of the contents of the IA File and later to provide Mr. Glass with severable portions of the IA File. Although the Circuit Court did not elaborate its reasoning for its departure from its decision in the 2011 PIA Lawsuit, it presumably was based on its understanding of the intervening *NAACP Branches* decision. After the January 2015 trial, the Circuit Court concluded that any such violation was not knowing and willful because the law on IA files was in flux at the time the County withheld those records and the County was acting on its understanding of the law.

Mr. Glass contends that his 2012 PIA Request literally sought records about himself and did not specifically request an IA file, that the rationale of *NAACP Branches* controls, and that he accordingly has a right to redacted versions of any records in Officer Collier's IA File that also pertain to himself. He relies on the reference to "severable" parts of records in GP §4-203 and argues that the PIA requires the Police Department to remove any "identifying information" related to Officer Collier from records in Officer Collier's IA File, some of which would concern the complainant (*i.e.*, Mr. Glass), and release the redacted records to Mr. Glass.

Because of the history of the IA complaints and litigation by Mr. Glass, however, the origin of those records would be obvious and, therefore, disclosure would "violate the substance of the [personnel records exception]," *NAACP Branches*, 430 Md. at 195, which is intended to preserve the "significant public interest in maintaining confidentiality" of internal affairs investigations, *Shropshire*, 420 Md. at 381. There is no contention that any other IA File would contain documents related to Mr. Glass apart from the file created as a result of his complaints against Officer Collier. Lest there be any doubt that Mr. Glass was seeking the IA File that had been denied earlier, when Mr. Glass sought summary judgment in this case in March 2013, he once again requested Officer Collier's file by name when he complained about not receiving "responsive records that are related to the Internal Affairs investigation of Plaintiff's complaints against Collier." Therefore, the County was legally correct in withholding those records both when Mr. Glass originally submitted the 2012 PIA Request and when he requested them specifically in his motion for summary judgment.

Unlike the redacted records in *NAACP Branches*, anything released from Officer Collier's IA File in the instant case would be a "personnel record of an *individual*," GP §4-311 (emphasis added) – namely, Officer Collier – and would not be "reasonably severable" in a manner "which does not violate the substance of the [personnel records] exemption," *NAACP Branches*, 430 Md. at 195. Like the requested records in *Dashiell*, "the instant records, even were redaction possible . . ., would be related to a specific identified *individual*," *Dashiell*, 443 Md. at 458-59 (emphasis added) – and "redaction [cannot] be

48

effective under the circumstances, *id.* at 460.  Therefore, it was not a violation of the PIA for the Police Department to withhold records from Officer Collier's IA File.

It appears that Mr. Glass has likely obtained more from the IA File than a requestor would normally be entitled to under the PIA.  He apparently received portions of the file as discovery during the litigation of his traffic case after an *in camera* review in the District Court.  And the Circuit Court later granted him access to redacted documents on January 23, 2014, before the *Dashiell* decision was issued.  In his brief, Mr. Glass asserts that, because the County has complied with that order, the question whether it was required to disclose parts of the IA File is moot.

Mr. Glass also asserts before us that many of the items in the IA File were not part of the internal affairs investigation of Officer Collier.  Rather, he says, those records were assembled after (according to Mr. Glass) the Department had concluded its investigation of his complaint in October 2010 and were used by the Police Department for the defense of Officer Collier in a federal lawsuit brought by Mr. Glass.  The County disputes Mr. Glass' conclusion that the IA investigation ended in October 2010, notes that Mr. Glass filed a second IA complaint against Officer Collier, and points to testimony that information bearing on the credibility of a complainant is typically part of an IA investigation, particularly of an incident to which the officer and the complainant are the only witnesses.

This is not to say that an agency may evade the requirements of the PIA by placing records in IA files that do not belong there.  But none of the judges of the Circuit Court

who considered Mr. Glass' various motions and contentions concerning the IA File made a finding that the Police Department had placed records in the IA File for purposes unrelated to its investigation of Mr. Glass' complaints, and we are not equipped to do so as an appellate court.

Our holding – that an IA file can be withheld in its entirety, without the need for a severability review[38] – applies only when a PIA request is directed to a specifically-identified IA file – that is, "a personnel record *of an individual*." GP §4-311(a) (emphasis added). Because Mr. Glass's request was functionally a request for the IA file of a specific, identifiable individual (Officer Collier), the County was required to withhold it in its entirety.[39] We thus agree with the Court of Special Appeals that the County did not violate the PIA in responding to Mr. Glass' 2012 PIA Request as it related to the IA File. *A fortiori*,

---

[38] The County argues that the Legislature's 2015 revision of GP §4-203(c) to eliminate the phrase "reasonably severable" from the statute reveals a legislative intent to narrow an agency's disclosure obligation under the PIA. It is not obvious why this would be so, as the revised statute now requires a custodian to "allow inspection of any part of the record that is subject to inspection." Indeed, the Attorney General's Office has taken the position that the amendment broadened a custodian's obligation to disclose records. Office of the Attorney General of Maryland, "Summary of New PIA Provisions Effective October 1, 2015," Office of the Attorney General of Maryland, "Summary of New PIA Provisions Effective October 1, 2015," http://www.marylandattorneygeneral.gov/Open Gov%20Documents/Summary_PIA_Provisions.pdf [https://perma.cc/S2MT-MNLY] (last visited April 27, 2017). We need not resolve this question in this case, as the revised statute was not in effect at the time of the 2012 PIA Request or at the time of the County's response to it.

[39] The fact that a particular record is included in an IA File does not exempt it from disclosure in response to a PIA request if the record is responsive to the request and exists elsewhere in the agency's records where it would not be privileged.

the County did not knowingly and willfully violate the PIA in initially withholding records from the IA File.

4.     Search of Records of the Police Chief

Finally, Mr. Glass focuses on the County's records search as it related to the office of the former Police Chief.  The Circuit Court concluded that, because Ms. Ryder was aware that the Police Chief's assistant used a chronological filing system, the County knowingly and willfully violated the PIA when Ms. Ryder did not instruct the Police Chief's secretary to focus the search on a particular date interval after an initial search of the Police Chief's records had not yielded any responsive records.  The Circuit Court did not award Mr. Glass any relief as a result of this conclusion.  Before us, Mr. Glass argues that the County's search of the Police Chief's office was not reasonable and that, as a result, the Circuit Court should have ordered the County to undertake a broad series of follow-up searches of the entire agency pursuant to GP §4-362(c)(3).

The 2012 PIA Request was broadly worded.  It sought "any and all" records concerning Mr. Glass in any form possessed by the Police Department or by any employee of the Police Department.  It was unbounded by date.  In her initial search in response to that request, Ms. Ryder had no reason to direct any other custodian of Police Department records, such as the Police Chief's assistant, to focus on records for any particular time period.  Mr. Glass himself testified at trial that, when asked for clarification when he initially submitted the request, he said that he wanted any records pertaining to him since his birth.  Thus, the fact that Ms. Ryder knew that some of the Police Chief's records were

51

kept chronologically was irrelevant. In his letter in reply to Ms. Ryder's response to the 2012 PIA Request, Mr. Glass named the Police Chief as one of the Police Department employees who might have responsive records and spotlighted his traffic stop by Officer Collier (which occurred on September 14, 2010). But, even then, Mr. Glass did not limit his request to any particular interval.

Mr. Glass has pointed to the fact that the search did not uncover a letter from the Police Chief to the State's Attorney dated August 25, 2011 requesting assignment of an Assistant State's Attorney to Mr. Glass' traffic case. (Mr. Glass apparently obtained the letter as a result of a PIA request to the State's Attorney's Office concerning his traffic case.) However, Mr. Glass' 2012 PIA Request provided no specific time references for a records search and the only date provided in his reply to Ms. Ryder's request for further direction was the date of the traffic stop – September 14, 2010.[40] Mr. Glass does not indicate how the fact that the Police Chief's general correspondence records were kept

---

[40] The Circuit Court reached its conclusion that the County had knowingly and willfully violated the PIA with respect to this aspect of its search in part because Ms. Ryder had not informed the Police Chief's assistant of a relevant date range. The court may have confused the 2012 PIA Request, which contained no date range, with the 2011 PIA Request or the 2013 PIA Request, both of which had date ranges. However, neither of those date ranges (September 14, 2010 through March 18, 2011, and February 23, 2012 through February 20, 2013, respectively) would have captured the letter dated August 25, 2011 (assuming that it was in fact filed chronologically).

52

chronologically would have led Ms. Ryder – or the Police Chief's assistant – to that letter, given the breadth of his request.

We agree with the Court of Special Appeals that the record concerning the search with respect to the Police Chief's office does not support a finding by clear and convincing evidence of a knowing and willful violation of the PIA. Nor is it a basis for ordering injunctive relief under GP §4-362(c)(3).

### III

### Conclusion

For the reasons explained above, we hold:

1 – The records manager of the Police Department was an appropriate custodian for a PIA request that encompassed archived emails of the Police Department stored with OIT when the Police Department itself accessed those records for its own purposes, and the records manager retained responsibility for asserting privileges and other exceptions to disclosure under the PIA with respect to those records.

2 – There was not clear and convincing evidence that the County knowingly and willfully violated the PIA in its response to the 2012 PIA Request with respect to the archived emails, the IA File, or the search of the Police Chief's records.

3 – The search of the Police Chief's office was reasonable in light of the nature of the PIA request and the failure to locate one record that might have been located there did not require the Circuit Court to order follow-up searches of the entire Police Department.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 20

September Term, 2016

_____

GARY ALAN GLASS

v.

ANNE ARUNDEL COUNTY, MARYLAND,
ET AL.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: May 25, 2017

Respectfully, I concur. I agree with the outcome of the case and that the majority opinion accurately discusses and applies this Court's holding in Md. Dep't of State Police v. Dashiell, 443 Md. 435, 117 A.3d 1 (2015). See Maj. Slip Op. at 45-46, 48-49. However, consistent with my dissent in Dashiell, id. at 464, 117 A.3d at 18 (Watts, J., dissenting), I would hold that, where an investigation against a law enforcement officer is completed and results in a sustained complaint, the record of the discipline imposed is not exempt from disclosure under the Maryland Public Information Act under its personnel records exemption. Indeed, in such circumstances, "the discipline that the law enforcement agency decides to administer to the officer does not directly pertain to employment or the officer's ability to perform his or her job[,]" but instead "is an action of—and thus reflects the judgment of—the law enforcement agency, not the officer." Id. at 467, 117 A.3d at 20 (Watts, J., dissenting). As such,

> a record of discipline based on a sustained complaint against a law enforcement officer is not a personnel record; instead, it is among the very types of document[s] that the Public Information Act is designed to make available to the public: a document that reflects how a public agency responds to an employee's proven misconduct.

Id. at 467, 117 A.3d at 20 (Watts, J., dissenting) (footnote omitted).

In this case, because the record does not reflect that a completed investigation into Officer Collier's conduct resulted in a sustained complaint pursuant to which the Anne Arundel County Police Department imposed discipline against Officer Collier, I agree with the result reached by the majority opinion.

For the above reasons, respectfully, I concur.