*Bernadette Fowler Lamson v. Montgomery County, Md.*, No. 67, September Term 2017, Opinion by Hotten, J.

**CIVIL LITIGATION – MARYLAND PUBLIC INFORMATION ACT – DISCRETION OF THE TRIAL COURT** – The Court of Appeals held that where there has been a denial of a Maryland Public Information Request, the proponent of the request is entitled to judicial review.  Upon review, the trial court must evaluate the sufficiency of the denial by employing one of three methods of review.  The method employed is subject to the discretion of the reviewing court but must be sufficient to demonstrate that the agency has asserted an exception that is applicable to the disputed documents.

**CIVIL LITIGATION – MARYLAND PUBLIC INFORMATION ACT – METHODS OF REVIEW -** The Court of Appeals held that when reviewing the denial of a Maryland Public Information Request, the trial court may require the presentation of evidence such as testimony or affidavits, order a *Vaughn* index, or conduct an *in camera* review to determine whether the agency has offered an applicable exception.

IN THE COURT OF APPEALS

OF MARYLAND

No. 67

September Term, 2017

_____

BERNADETTE FOWLER LAMSON

v.

MONTGOMERY COUNTY, MD
_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.
Watts, J., concurs.

_____

Filed: July 31, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

The issue before us is a request for the release of notes containing possible personnel information, relating to the performance of Bernadette Fowler Lamson ("Petitioner") as an employee of the Montgomery County Attorney's office. Petitioner filed a Maryland Public Information Act ("MPIA")[1] request relative to her personnel file, seeking the disclosure of supervisory notes that were withheld by her employer, Montgomery County ("Respondent") and her supervisor, Silvia Kinch ("Ms. Kinch"). The disputed notes are divisible into two separate categories. The first consists of three pages of notes that were removed from Petitioner's personnel folder prior to its disclosure and the second set consists of notes that are contained in a personal journal in the exclusive possession and control of Ms. Kinch. With regard to both, Petitioner asserts that Respondent improperly withheld the notes when responding to her MPIA request. In response, Respondent contends that the notes are privileged, non-public information. Petitioner now seeks review of the grant of summary judgment in Respondent's favor, to determine whether the disputed notes were subject to disclosure under the MPIA. For the reasons discussed *infra,* we shall vacate the judgment of the Court of Special Appeals and remand with instructions.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was an employee of the Office of the Montgomery County Attorney for over twenty years. During that time, she received "highly successful" reviews and top performance ratings. In 2015, Ms. Kinch downgraded Petitioner's performance rating from "highly successful" to "successful," which prevented her from receiving a 20-year,

---

[1] The MPIA is codified as Md. Code, (2014), § 4-101 *et seq.* of the General Provisions Article, ("Gen. Prov.").

2% performance bonus. Prompted by the negative rating, Petitioner requested access to her personnel file on September 1, 2015, which was provided after three pages of supervisory notes were redacted. On October 8, 2015, after receiving this response, Petitioner filed a MPIA request specifying 16 categories of public records, including the missing notes. Specifically, Petitioner requested the following categories of information:

1. Any and all supervisory notes or other materials written, authored or prepared by Silvia Kinch, John Markvos and Marc Hansen;
2. Supervisory notes removed from Ms. Lamson's supervisory file by Ms. Kinch on or about September l, 2015, including all notes removed by Ms. Kinch prior to providing Ms. Lamson a copy of her supervisory file;
3. Any and all investigatory files, inquiries, negative statements, or complaints in which Ms. Lamson is the subject and/or is discussed therein;
4. Ms. Lamson's proposed transfer from full time status to part time status;
5. Ms. Lamson's move from her 4th floor office to a 3rd floor office in the Executive Office Building ("EOB");
6. Ms. Lamson's transfer from the Office of the County Attorney ("OCA") Division of Human Resources to the Division of Finance and Procurement or any other OCA division;
7. Ms. Lamson's removal as counsel to the Montgomery County Fire and Rescue Service ("MCFRS");
8. Placement of Jodi Schultz or other OCA staff attorney assigned to MCFRS matters - except workers' compensation cases;
9. Ms. Lamson's proposed change in duty assignment from MCFRS to the Animal Matters Hearing Board;
10. Ms. Lamson's FY 2015 performance appraisal;
11. Copy of statement from William "Bill" Scott complaining about Ms. Lamson and all records discussing Mr. Scott's complaints about Ms. Lamson;
12. Any and all e-mails or documents discussing Ms. Lamson between and/or among Marc Hansen, John Markvos, Silvia Kinch, Karen Federman-Henry and Ed Lattner from February 1, 2015 to the present;
13. Any and all e-mails or documents between and/or among Marc Hansen, John Markvos, Silvia Kinch, Ed Lattner, and Assistant Chief Ed Radcliff related to Ms. Lamson's MCFRS representation and/ or agency assignment, duties, and/ or responsibilities;
14. Requests, discussions and/ or inquiries to conduct electronic surveillance and/or tracking on Lamson or other OCA staff members;
15. Any and all data gathered as a result of conducting electronic surveillance and/or tracking of Lamson or other OCA staff members; and

16. Communications with any other agency concerning Bernadette Lamson or any person including, but not limited to, the Board of Investment Trustees, Montgomery County Department of Corrections and Rehabilitation, Montgomery County Revenue Authority, Montgomery County Fire and Rescue Service, Montgomery County Office of Human Resources, and retirement agency.

On January 27, 2016, Respondent provided several responses to the MPIA request.

Regarding request number one, Respondent asserted that:

First, while an employee such as Ms. Lamson may review her own personnel file under [Gen. Prov.] § 4-311[2], supervisory notes are not a part of an employee's personnel file under the County's personnel regulations. MCPR § 4-8[3] ("Supervisory notes are not considered official employee records and are not subject to review by the employee or others.").

Second, supervisory notes constitute "interagency or intra-agency letters or memoranda" under [Gen. Prov.] § 4-344 and are also shielded from disclosure by executive privilege and the *Morgan* doctrine.[ ] These notes contain the mental impressions and reveal the internal deliberations of the writer, Ms. Lamson's supervisor. Inquiry into the mental processes of an

---

[2] Gen. Prov. § 4-311 provides:
(a) Subject to subsection (b) of this section, a custodian shall deny inspection of a personnel record of an individual, including an application, a performance rating, or scholastic achievement information.

* * *

(b) A custodian shall allow inspection by:
(1) the person in interest; or
(2) an elected or appointed official who supervises the work of the individual.

[3] The Montgomery County Personnel Regulations provide:

A supervisor may maintain informal notes regarding performance or other information about an employee under the supervision of that supervisor. Supervisory notes are not considered official employee records and are not subject to review by the employee or others.

Montgomery County, Md. Personnel Regulation § 4-8 (2001).

3

administrative decision maker would be contrary to the public interest and inimical to the integrity of the supervisory process.

Respondent concluded by stating that the supervisory notes constitute attorney work product. Regarding the second request, Respondent reiterated the rationale advanced in request one. Regarding the remaining requests, Respondent either provided the documentation or denied the existence of the document.

Thereafter, Petitioner filed a Complaint on February 24, 2016 in the Circuit Court for Montgomery County, alleging that Respondent violated the MPIA, and requested that the court order the disclosure of all relevant documents. In response, Respondent asserted that both sets of notes were not personnel records and were privileged or confidential by law, privileged attorney-client documents, attorney work product, or not subject to disclosure because of executive privilege. Thereafter, Respondent filed a Motion to Dismiss, or alternatively, a Motion for Summary Judgment. On May 10, 2016, Petitioner filed a Motion for a *Vaughn* index,[4] seeking judicial review of the requested documents. Respondent proposed instead that the court conduct an *in camera* review, contending that a *Vaughn* index was only appropriate when the documents are voluminous and suggested that an *in camera* review was more practical. On June 22, 2016, the trial court considered

---

[4] The term "*Vaughn* index" originates from the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). This process requires the party in possession of a disputed document to submit a list of documents in possession, setting forth the date, author, general subject matter and claim of privilege for each document claimed to be exempt from discovery. A discussion of this term occurs in detail, *infra*.

arguments and issued an oral ruling granting the Respondent's Motion to Dismiss. The court stated:

> I find that all of these notes kept by Ms. Kinch that have been, the way it's been argued to me and briefed to me, are not public records and that they're supervisory notes. And they are not included in a personnel file. And they are exempted under the Montgomery County Code, which talks about supervisory notes that are excluded. And they're not governmental.
>
> I don't want to get to the slope that you guys keep talking about being slippery. I just don't think that, I think a supervisor should be able to keep private notes under the law, and that's what we have here, and not explain to the whole world every time he or she does as to what's in them. And I use the example that if, in fact, she confides in someone, whether it be a friend or whether it be a relative or even whether it be another employee, does that have to be disclosed? In other words, if the [Petitioner] says under Freedom of Information, have you ever made any derogatory statements to any personnel members for the Montgomery County? If she had to reveal that or he at any time, that[sic], I believe, would be an abomination of this rule. I don't believe the Legislature intended it to be that way. I think the Legislature intended that what's in your personnel file, and we all know what that means, don't put that in my personnel file or put that in my personnel file, things that are going to go with you, be used to evaluate you, and that work product or mental impressions or discussions or thought processes or even discussions among other supervisors are not intended under this act the way I see it.

As a result, the trial court concluded that an *in camera* review was not required, because the notes were not considered personnel records pursuant to Montgomery County Personnel Regulation § 4-8 (2001). Thereafter, Petitioner noted a timely appeal to the Court of Special Appeals.

The Court of Special Appeals issued its unreported opinion on August 25, 2017. *See Lamson v. Montgomery Cty.*, No. 892, Sept. Term 2016, (Md. Ct. Spec. App. Aug. 25, 2017), 2017 WL 3668171, *cert. granted*, 456 Md. 523, 175 A.3d 151 (2017). The Court rephrased the questions presented by Petitioner and addressed two primary issues. The

5

first issue addressed arguments relating to the trial court's review of the responses to her MPIA request. The second issue related to the finding that the personnel notes fell outside the parameters of an MPIA request. The Court began by outlining the purpose of the MPIA, noting that the Act was created to grant access to sensitive information pursuant to several statutory limitations, such as where federal or state law prohibits it, or where the disclosure of information runs contrary to the public interest. *See Glenn v. Maryland Dep't of Health & Mental Hygiene*, 446 Md. 378, 384, 132 A.3d 245, 249 (2016). Next, the Court observed that the MPIA generally allows individuals to obtain private records about themselves, including personnel records and that such records should be provided, in the absence an adequate justification.

Turning to the merits of the appeal, the Court of Special Appeals determined that Respondent sufficiently responded to requests three through sixteen, and that Petitioner did not allege sufficient facts to support challenges to those responses. Regarding requests one and two, the Court found that the "supervisory notes do not fit within the definition of excludable 'supervisory notes' under the Montgomery County Personnel Regulations, and that the trial court abused its discretion by failing to review them *in camera* to determine whether non-disclosure was justified on other grounds." *Lamson*, 2017 WL 3668171, at *5. In reaching this conclusion, the Court noted that the MPIA preempts any county regulation imposed under Montgomery County Personnel Regulations and determined that county regulations could not preclude disclosure of Petitioner's personnel records. As such, county regulations could not be used to justify the denial of an MPIA request.

6

Regarding the notes contained in Ms. Kinch's private journal, the Court determined that they were not subject to disclosure because they were made by Ms. Kinch in an unofficial capacity and kept outside of Petitioner's personnel folder. As such, the Court determined that they were not public in nature and thus, not subject to disclosure. Following this decision, Petitioner filed for *certiorari,* which we granted. 456 Md. 523, 175 A.3d 151 (2017).

## STANDARD OF REVIEW

"Judicial review of an agency's decision on MPIA requests is authorized by Gen. Prov. § 4-362, which permits a person who is denied inspection of a public record to challenge the denial by filing a complaint in the circuit court." *Action Comm. for Transit, Inc. v. Town of Chevy Chase*, 229 Md. App. 540, 558, 145 A.3d 640, 650 (2016). "The standard of review for a trial court's decision on a government's response to an MPIA request is 'whether that court had an adequate factual basis for the decision it rendered and whether the decision the court reached was clearly erroneous.'" *Id*. We have defined the clearly erroneous standard by stating, "[i]f any competent material evidence exists in support of the trial court's factual findings, those findings cannot be held to be clearly erroneous." *Webb v. Nowak*, 433 Md. 666, 678, 72 A.3d 587, 594 (2013). However, "[t]o the extent the [c]ircuit [c]ourt's exercise of discretion is based on an interpretation of law, that aspect of the ruling below is reviewed *de novo*…." *Lamone v. Schlakman*, 451 Md. 468, 479, 153 A.3d 144, 151 (2017). Moreover, the Circuit Court for Montgomery County granted Respondent's Motion to Dismiss. "We review the grant of a [M]otion to [D]ismiss

7

*de novo*." *Reichs Ford Rd. Joint Venture v. State Roads Commission of the State Highway Administration*, 388 Md. 500, 509, 880 A.2d 307, 312 (2005). In determining whether the decision of a lower court was legally correct, we give no deference to the trial court findings and review the decision under a *de novo* standard of review. *See Walter v. Gunter*, 367 Md. 386, 392, 788 A.2d 609, 612 (2002). *See also Breslin v. Powell*, 421 Md. 266, 277, 26 A.3d 878, 885 (2011). As a result, we shall review the merits of this matter *de novo* to determine whether the MPIA was properly interpreted and the grant of the motion to dismiss was legally correct.

## DISCUSSION

*The Purpose of the MPIA*

The MPIA creates an affirmative right for all persons granting "access to information about the affairs of government and the official acts of public officials and employees." Gen. Prov. § 4-103. *See also Glass v. Anne Arundel Cty.,* 453 Md. 201, 207-08, 160 A.3d 658, 661-62 (2017). We have explained this right, stating that the MPIA "was created to 'provide the public the right to inspect the records of the State government or of a political subdivision within the State.'" *Glenn*, 446 Md. at 384, 132 A.3d at 249. Additionally, we noted that public policy creates "a general presumption in favor of disclosure of government or public documents." *Id*. at 385, 132 A.3d at 249. *See also Maryland Dep't of State Police v. Maryland State Conference of NAACP Branches*, 430 Md. 179, 190, 59 A.3d 1037, 1043 (2013). However, in *Glass*, we outlined the numerous exceptions to disclosure contained in the MPIA and classified them into four categories.

8

The first category prevents the disclosure of documents controlled by other laws. *Glass*, 453 Md. at 209, 160 A.3d at 662. Where a law controls disclosure of a particular document, Gen. Prov. § 4-301 prevents disclosure of the document. *Id*. The second category identifies documents or information that an agency may not disclose, also known as "mandatory exceptions." *Id*. The mandatory exceptions prevent the disclosure of documents or information and require the custodian of records to deny a request for those records or information outright. Moreover, "the statute forbids an agency from disclosing certain types of information that may appear in a record, even if other parts of the record are open to inspection." *Id*. at 209, 160 A.3d at 662–63. *See also* Gen. Prov. § 4–328 et seq. The third category of exceptions consists of "discretionary exceptions." *Id*. This category describes the exceptions in the MPIA that require a custodian of record to decide whether disclosure of the record or information would be contrary to the public interest. The discretionary exceptions "are 'discretionary' not in the sense that the agency may withhold or disclose as it pleases, but in the sense that the agency must make a judgment whether the statutory standard for withholding a record—that is, disclosure 'would be contrary to the public interest'—is met. *Id*. at 210, 160 A.3d at 663. Finally, the MPIA permits an agency to refuse disclosure subject to several enumerated limits. This "catch-all exception" permits the temporary denial of inspection of records not otherwise exempt from disclosure, if the custodian believes that inspection would cause substantial injury to the public interest and the agency obtains a court order within 10 days. *Id*.

9

One of the mandatory exceptions is set forth in Gen. Prov. § 4-311 and controls the disclosure of personnel records and requires that the custodian of personnel records "deny inspection of a personnel record of an individual, including an application, a performance rating, or scholastic achievement information." The provision also contains a requirement that the custodian permit inspection of the record when requested by the "person of interest" or a supervisor of the person in interest. *Id.* A "person of interest" is defined as "a person or governmental unit that is the subject of a public record or a designee of the person or governmental unit[.]" Gen. Prov. § 4-101(g). A "person of interest" may have a broader right of access to a record than other persons that may pursue the right to inspect a record. This provision is in contrast to the provisions governing general records subject to disclosure and explicitly mandates that the records be kept private, unless requested by the person in interest or a supervisor of such a person. To be clear, while personnel records are a sub-category of "public records," they are largely exempt from disclosure. *See* Gen. Prov. § 4-304 (stating, "a custodian shall deny inspection of a public record, as provided in this part"). As such, where there is an assertion that the records at issue may constitute personnel records there must be an inquiry into the nature of the records to determine which rules govern their disclosure. To pursue that examination we must first define both types of records.

The MPIA broadly defines a "public record" as any document that "is made by a unit or an instrumentality of the State or of a political subdivision or received by the unit or instrumentality in connection with the transaction of public business[.]" Gen. Prov. §

10

4-101(j)(1)(i). It includes any copy of a public record, including written documents, photographs, and drawings in both printed and electronically stored formats. This definition is in line with the purpose of the MPIA generally. Because the MPIA is designed to grant access to documents regarding the affairs of government and the official acts of public officials, it follows that the definition of a public record should be broad enough to cover a wide range of document types. One type of public record is a personnel record. These records, which are not explicitly defined by the MPIA, have been addressed by the Court in *Kirwan v. The Diamondback*, which discussed the definition of a personnel record in some detail. 352 Md. 74, 721 A.2d 196 (1998). The *Kirwan* Court noted that Gen. Prov. § 4-311 provides examples of the types of records that constitute personnel records. Gen. Prov. § 4-311(a) states, "[s]ubject to subsection (b) of this section, a custodian shall deny inspection of a personnel record of an individual, including *an application*, a *performance rating*, or *scholastic achievement information*. (Emphasis added). Gen. Prov. § 4-311. The *Kirwan* Court then explained that this enumerated list describes what the General Assembly intended to constitute a personnel record. *Kirwan*, 352 Md. at 82, 721 A.2d at 200. The Court went on to state that a personnel record consists of "those documents that directly pertain to employment and an employee's ability to perform a job." *Id*. at 83, 721 A.2d at 200. Further, the *Kirwan* Court indicated:

> [T]he General Assembly intended that *any* record identifying an employee would be exempt from disclosure as a personnel record. Instead, the General Assembly likely intended that the term 'personnel records' retain its common sense meaning. This is indicated by the list following the prohibition on the release of the personnel records.

11

*Id*. at 84, 721 A.2d at 200.  (Emphasis in original).  With these definitions in mind, we must now determine how they influence the review of a denied MPIA request.

*Review of a denied MPIA request*

Judicial review of a denied MPIA request is authorized by Gen. Prov. § 4-362.  The provision states that, "whenever a person or governmental unit is denied inspection of a public record or is not provided with a copy, printout, or photograph of a public record as requested, the person or governmental unit may file a complaint with the circuit court." Gen. Prov. §  4-362(a)(1).  This subtitle also contains several prescriptions that govern the review of a denied request.  Specifically, the provision instructs an aggrieved party on the proper venue for filing a complaint, articulates the limits of the reviewing court, and most importantly describes the methods that a court may use in evaluating the sufficiency of a denial of an MPIA.  *See* Gen. Prov. § 4-362(c)(1), (2) and (3).

In reviewing the Motion to Dismiss, we first examine the procedure employed by the Circuit Court for Montgomery County.  The trial court determined that the notes were not subject to review because such disclosure was precluded by Montgomery County Personnel Regulation § 4-8.  We agree with the finding of the Court of Special Appeals and determine that Montgomery County Regulations cannot be invoked to prevent disclosure of records.  In reaching this conclusion, we are reminded of our decision in *Police Patrol Sec. Sys., Inc. v. Prince George's Cty*., 378 Md. 702, 711, 838 A.2d 1191, 1196 (2003) (hereinafter "*Police Patrol*").  In *Police Patrol*, we considered the relationship between local ordinances and the prescriptions of the MPIA and determined that "a county

12

charter is subordinate to the public general laws of Maryland." *Id.* at 712, 838 A.2d at 1197. We went on to state that "[a] local government ordinance or charter that conflicts with a public general law enacted by the General Assembly is preempted and thus is invalid." *Id.* In the case at bar, the trial court permitted the invocation of Montgomery County Personnel Regulation § 4-8 to prevent the disclosure of Petitioner's personnel records in contravention of the MPIA. Montgomery County Personnel Regulation § 4-8 categorially precludes the disclosure of records that are permitted under the MPIA. As such, the regulation conflicts with the express language of the MPIA. Pursuant to *Police Patrol*, we must find the regulation invalid as it impermissibly limits the application of a state law enacted by General Assembly.

Thereafter, the Court of Special Appeals made two determinations relative to the notes at issue. Regarding the notes that were removed from Petitioner's physical personnel file, the Court determined that an additional review of the notes was required so that the trial court could properly evaluate Respondent's denial of the MPIA request. Specifically, the Court noted that the trial court's reliance on Montgomery County regulations left "no independent basis for the court to review the notes *in camera* or to require an index." *Lamson*, 2017 WL 3668171, at *6. The Court went on to determine that its analysis of the records reopened the question and required further proceedings. We agree. However, regarding the second set of notes, *i.e.*, the notes contained in Ms. Kinch's personal journal, we reach a different conclusion. The Court of Special Appeals determined that the second set of notes were outside the definition of a personnel record because they were contained

13

in a personal journal that was never a part of Petitioner's personnel file and were intended to be private. However, the mere physical location of a record is not necessarily dispositive of its characterization. It is equally possible that the notes contain entries that relate to Petitioner's employment and or the devaluation of her performance rating. In either instance, there is uncertainty regarding the nature of the records at issue and must be resolved by closely examining the notes at issue, as well as the exceptions offered thereto.

The plain language of Gen. Prov. § 4-362 permits the trial court to conduct an *in camera* review of disputed materials to determine whether they are subject to disclosure. The subtitle provides "[t]he court may examine the public record *in camera* to determine whether any part of the public record may be withheld under this title." Gen. Prov. § 4-362(c)(2). In order for a trial court to accomplish this goal, they must be satisfied that the agency rationale offered in denying a MPIA request is fully supported. With this idea in mind, we turn to our discussion in *Cranford v. Montgomery Cty.,* 300 Md. 759, 481 A.2d 221 (1984). In *Cranford*, we examined a trial court's ability to conduct an inquiry into the denial of an MPIA request and evaluated what is necessary for the proper denial of a MPIA request. This case also provides an apt summation of the methods of evaluation and informs our decision today. At issue in *Cranford* was a Sentinel Newspaper request for documents relating to a construction project in Montgomery County Government Center. *Id*. at 763, 481 A.2d at 223. In reviewing the merits of the request, we articulated several holdings that are relevant to the instant dispute. The Court noted competing interests that are inherent in a MPIA request, which place at issue one party's statutory right to disclosure

14

and another party's assertion of an exception that prevents disclosure. *Id*. at 777, 481 A.2d at 230. In addressing this tension, the Court noted that

> The [MPIA] imposes the burden on the records custodian to make a careful and thoughtful examination of each document which fairly falls within the scope of the request in order for the custodian initially to determine whether the document or any severable portion of the document meets all of the elements of an exemption.

*Id.* at 777, 481 A.2d at 230. The Court explained this requirement and stated that "[t]he General Assembly did not intend for custodians broadly to claim [exceptions] and thereby routinely to pass to the courts the task of performing *in camera* inspections." With this in mind, the Court established a rule that provides the trial court with discretion in reviewing disputed documents. The Court determined that, "the ultimate standard under the [MPIA] for determining whether an *in camera* inspection is to be made is whether the trial judge believes that it is needed in order to make a responsible determination on claims of [exceptions]." *Id*. at 779, 481 A.2d at 231.

To make a "responsible determination" the trial court must make two initial findings. First, the court must determine whether the documents at issue are a public "record." This requires that the court examine whether the notes "were made in connection with public business" as required by Gen. Prov. § 4-101. If the notes are not public "record," then the MPIA does not apply and the records are not required to be disclosed under the MPIA. If the notes are a public record then the trial court must determine what type of public records are at issue. This second level of inquiry seeks to classify the records in a manner that permits the court to apply the appropriate MPIA provisions while

15

reviewing the denied request. This is particularly important in this case because Petitioner has asserted that the records are personnel records, which are generally subject to disclosure when requested by the person of interest. *See* Gen. Prov. § 4-311(b). In classifying the documents a second time, the trial court must determine whether the agency's rationale for denying the request is sufficient. *See Cranford*, 300 Md. at 780, 481 A.2d at 231 (reaffirming that the burden rests with the agency to demonstrate that an exception justifies non-disclosure). The second step in making a "reasonable determination" requires that the trial court review the exceptions made by the agency to determine whether they are justified. With this step, the trial court must determine whether the exceptions offered by the agency sufficiently prevent the disclosure of the record.

To make the required determinations, the trial court must apply one of the following methods in evaluating an MPIA request. The first method is a *Vaughn* index, which originates from the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). This method has also been described as "a system of itemizing and indexing that correlates each of the government's justifications for its refusal to disclose the documents with the actual portions of the documents at issue." *Lewis v. I.R.S.*, 823 F.2d 375, 377 n.3 (9th Cir. 1987). We described this method in *Office of State Prosecutor v. Judicial Watch, Inc.*, 356 Md. 118, 121, 737 A.2d 592, 594 (1999). There we indicated that a *Vaughn* index "required the responding party to provide a list of documents in possession, setting forth the date, author, general subject matter and claim of privilege for each document claimed to be exempt from

16

discovery." *Id*. n.1, 737 A.2d at 593 n.1 The *Cranford* Court addressed this method and determined that it is a viable alternative to an *in camera* review.

The second method that can be employed is the submission of testimony or affidavits, which detail the nature of the denial and establish the basis for the denial. *See* Maryland Gen. Prov. § 4-362. In describing this method, the *Cranford* Court determined that the agency must demonstrate that the exception applies and may do so by offering evidence by way of testimony or affidavits from the custodian of record. *Cranford*, 300 Md. at 779, 481 A.2d at 231.

The final method permits the trial court to conduct an *in camera* review to evaluate the merits of an agency denial of an MPIA request. This method is enumerated in Maryland Gen. Prov. § 4-362 and is appropriate where the submission of other evidence is not sufficient to evaluate a denial of an MPIA request. This method is also appropriate where the documents at issue are not voluminous. *See Cranford*, 300 Md. at 779, 481 A.2d at 231.

Regarding the three methods, the *Cranford* Court determined that the agency carries the burden to justify disclosure because of the Court's refusal to accept conclusory statements in support of "generalized allegations of [exceptions]." *Cranford*, 300 Md. at 778, 481 A.2d at 230. The Court also stated that there is an "emphasis on an explanation which presents enough detail to make understandable the issues involved in the claim of [exception] without presenting so much detail as to compromise the privileged material…" *Id*., 481 A.2d at 230-31. In reaching this conclusion, the *Cranford* Court reasoned that

17

there may not always be a need to conduct *in camera* review.  As such, the Court enumerated factors for a trial court to consider when deciding which method to apply.  The factors include judicial economy, the conclusory nature of the agency affidavits, bad faith on the part of the agency, disputes concerning the contents of the document, whether the agency has proposed *in camera* inspection, and the strength of the public interest in disclosure.  *Cranford*, at 779, 481 A.2d at 231.

In applying the *Cranford* factors to the case at bar, *in camera* review may be the preferable method to review the disputed notes.  The first factor, judicial economy, is best served by conducting *in camera* review because the documents at issue are not voluminous.  The second factor, which examines the conclusory nature of the exceptions offered, requires the trial court to evaluate the exceptions and the rationale offered in support thereof.  Where the trial court determines that the exceptions offered are general in nature, *Cranford* requires additional inquiry into the exceptions offered.  Respondent's primary assertion is that the journal notes are privileged attorney-client documents.  However, the trial court did not evaluate the veracity of the assertion.  Because the assertion is general in nature, the trial court must conduct a review that reflects an evaluation of the assertion.  Finally, the last relevant factor considers the fact that the agency suggested *in camera*.  In the instant case, Respondent, in responding to Petitioner's request for a *Vaughn* index, stated that an *in camera* review "is available" although Respondent disputed its necessity.  Nonetheless, the trial court should consider Respondent's statement when deciding the method of review for the disputed notes.

## CONCLUSION

Where there has been a denial of a proper MPIA request the proponent of the request is entitled to judicial review to evaluate the sufficiency of the denial. Further, the trial court in reviewing the denial must be satisfied that the rationale offered by the agency supports the denial of the request. To make this determination, the trial court may require the presentation of evidence such as testimony or affidavits, order a *Vaughn* index, or conduct an *in camera* review. While the trial court is free to employ the method it deems appropriate under the circumstances there must be a showing that all the requirements of the asserted exception have been met. Based on an application of the *Cranford* factors it appears that *in camera* review will likely be the appropriate method for review of the disputed notes. However, regardless of the method applied, the trial court must not permit Respondent to make generalized allegations and must require that Respondent offer an explanation that reasonably demonstrates that the exceptions are applicable. In the case at bar, the trial court granted Respondent's Motion to Dismiss erroneously. As discussed *supra* reliance on Montgomery County Regulations will not support the denial of a valid MPIA request. Because the trial court ruled on these grounds, the record is devoid of any evidence that suggests an inquiry was made into the exceptions offered by Respondent. As such, the trial court did not sufficiently review the denial of Petitioner's MPIA request. Therefore, we must vacate the judgment of the Court of Special Appeals and remand the case to the circuit court for further proceedings consistent with this opinion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT.**

Circuit Court for Montgomery County
Case No. 415227-V

Argued: May 7, 2018

IN THE COURT OF APPEALS

OF MARYLAND

No. 67

September Term, 2018

_____

BERNADETTE FOWLER LAMSON

v.

MONTGOMERY COUNTY, MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Concurring Opinion by Watts, J.

_____

Filed: July 31, 2018

Respectfully, I concur. I agree with the majority opinion's holding remanding the case for further proceedings, but I would remand the case to the Court of Special Appeals with instructions to vacate the judgment of the Circuit Court for Montgomery County and order the circuit court to conduct an *in camera* review of the notes contained in Petitioner's supervisor's journal. The majority opinion remands the case for the circuit court to choose the method of addressing potential disclosure of the notes in the supervisor's journal, stating that "the [circuit] court may require the presentation of evidence such as testimony or affidavits, order a *Vaughn* index, or conduct an *in camera* review." Maj. Slip Op. at 19. Indeed, the majority opinion states that, although the circuit "court is free to employ the method it deems appropriate under the circumstances[,]" "it appears that *in camera* review will likely be the appropriate method for review of the disputed notes." Maj. Slip Op. at 19. In its opinion, the Court of Special Appeals authorized the *in camera* review of the supervisory notes contained in Petitioner's supervisory file. See Lamson v. Montgomery Cty., 2017 WL 3668171, at *6-*7 (Md. Ct. Spec. App. Aug. 25, 2017). And, I would expressly conclude that an *in camera* review is likewise warranted of the notes contained in Petitioner's supervisor's journal as well.

For the above reasons, respectfully, I concur.