*John Critzos, II v. David Marquis, et al.*, No. 293, Sept. Term 2022. Opinion filed on January 3, 2023, by Berger, J.

FRUSTRATION OF PURPOSE - COMMERCIAL LEASE - COVID-19 PANDEMIC - EXECUTIVE ORDERS LIMITING BUSINESS OPERATIONS - BREACH OF LEASE - TENANTS' FAILURE TO PERFORM

The principle underlying the frustration of purpose doctrine is that where the purpose of a contract is completely frustrated and rendered impossible of performance by a supervening event or circumstance, the contract will be discharged. There are three factors that courts should consider when determining whether the frustration of purpose doctrine applies: (1) whether the intervening act was reasonably foreseeable; (2) whether the act was an exercise of sovereign power; and (3) whether the parties were instrumental in bringing about the intervening event. The Appellate Court of Maryland reasoned that the level of disruption caused by the COVID-19 pandemic was not reasonably foreseeable. The Court further observed that it was not disputed by the parties that the COVID-19 related executive orders restricting business operations were an exercise of sovereign power and that the parties were not instrumental in bringing about the COVID-19 pandemic and associated shutdowns. Therefore, the determination of whether performance under a commercial lease was excused by the frustration of purpose doctrine turned on the determination of whether performance was rendered legally impossible.

LEGAL IMPOSSIBILITY - COMMERCIAL LEASE - COVID-19 PANDEMIC - EXECUTIVE ORDERS LIMITING BUSINESS OPERATIONS - BREACH OF LEASE - TENANTS' FAILURE TO PERFORM

The determination of whether performance under a commercial lease was rendered legally impossible by the COVID-19 emergency and associated shutdowns businesses is necessarily fact specific and dependent upon expressly what is permitted by the terms of the lease. When a commercial lease did not limit the tenants to operating an indoor, in-person restaurant and brewery, nor did the lease prohibit carry-out or delivery service, the lease was not rendered legally impossible. The Governor's executive orders limited the tenants' business operations, but they did not render the sole purpose of the lease illegal. Economic challenges do not themselves establish the affirmative defenses of frustration of purpose or legal impossibility. Because the COVID-19 pandemic restrictions did not order a complete shutdown of the tenants' business, the evidence presented to the circuit court was insufficient to establish the affirmative defenses of frustration of purpose and legal impossibility.

Circuit Court for Anne Arundel County
Case No. C-02-CV-20-1265

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 293

September Term, 2022

_____

JOHN CRITZOS, II

v.

DAVID MARQUIS, ET AL.

_____

Kehoe,
Berger,
Arthur,

JJ.

_____

Opinion by Berger, J.

_____

Filed: January 3, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

* Ripken, J., did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

This case presents the issue of whether the COVID-19 pandemic and associated executive orders limiting business operations throughout the State of Maryland rendered performance under a commercial lease for a brewery/pub legally impossible or so frustrated the purpose of the contract as to excuse the tenant's performance. Commercial landlord John Critzos, II appeals an order of the Circuit Court for Anne Arundel County granting judgment in favor of his former tenants, David and Carolyn Marquis, appellees. The Marquises conceded that they did not make rent payments as required by the commercial lease, but the circuit court determined that the Marquises' failure to satisfy their obligations under the commercial lease at issue was excused by the legal doctrines of frustration of purpose and impossibility. Critzos contends that the Marquises failed to establish the affirmative defenses of frustration of purpose and/or legal impossibility, and, therefore, the circuit court erred in entering judgment in favor of the Marquises. For the reasons explained herein, we shall reverse.

## FACTS AND PROCEEDINGS

The facts underlying this appeal are largely not in dispute. On September 21, 2015, the parties signed a lease for a property located at 114 West Street in Annapolis, Maryland for the establishment of a "brewery/pub." The lease was for the period of January 1, 2016 through December 31, 2020. The Marquises operated a restaurant/pub known as Chesapeake Brewing Company without substantial difficulties until the arrival of the COVID-19 pandemic.

On March 5, 2020, as COVID-19 began to spread throughout the United States, Governor Larry Hogan declared a "State of Emergency and Existence of Catastrophic

Health Emergency" in the State of Maryland. On March 12, 2020, the Governor issued an executive order requiring that bars and restaurants close by 5:00 p.m. on March 16, 2020. Restaurants and bars were permitted to sell food and beverages for carry-out, drive-through, or delivery if they operated "in accordance with any social-distancing recommendations of the Maryland Department of Health."[1] As of May 29, 2020, the statewide restrictions were relaxed to allow restaurants to serve food and beverages to customers for consumption in outdoor seating areas, and, on June 12, 2020, restaurants were permitted to serve food indoors at fifty percent of their maximum capacity.

In April 2020, the Marquises asked Critzos to abate the April rent in light of the COVID-19 health emergency and the Marquises' inability to operate the brewery and restaurant as usual. Critzos and the Marquises attempted to negotiate but were unable to reach an agreement. Critzos's property manager set a deadline for the Marquises to pay the overdue April rent. The Marquises did not pay the rent and, instead, they provided written notice to Critzos on April 23, 2020 that they wished to terminate the lease. The circuit court found that the Marquises were unable to pay the rent, crediting Carolyn Marquis's testimony that they had no source of income other than revenue from the brewery and David Marquis's military pension. On May 3, 2020, the Marquises vacated the premises and returned the keys to Critzos.

---

[1] The circuit court observed that carry-out food service was not permitted until May 6, 2020. Other dates referenced in the circuit court's opinion appear to not precisely match the dates set forth in the Governor's executive orders. For example, the circuit court observed that outdoor dining was permitted on June 3, 2020, while the executive order issued by Governor Hogan on May 27, 2020 allowed for outdoor restaurant service to begin on May 29, 2020. These date discrepancies appear to be an oversight by the circuit court.

On May 27, 2020, Critzos filed a complaint in the Circuit Court for Anne Arundel County alleging that the Marquises had breached their lease. Critzos sought damages in the amount of $80,200.62 for unpaid rent and common area maintenance. Critzos ultimately withdrew the claim for common area maintenance and sought a judgment in the amount of $79,533.45 plus attorney's fees in the amount of $4,340.22.

The case came before the circuit court for a bench trial on July 28, 2021. At trial, Critzos presented evidence establishing the existence of a contract, breach of said contract, and damages. The Marquises presented the affirmative defenses of frustration of purpose and legal impossibility. The court heard testimony from the parties. The Marquises testified that they were unable to operate their restaurant and brewery in light of the COVID-19 related closures. The Marquises argued that their inability to operate their restaurant should excuse their nonpayment of rent to Critzos.

On the day of trial, Critzos presented the court with a bench memorandum citing various out-of-state cases. At the Marquises' request, the circuit court granted the Marquises thirty days to file a response to Critzos's bench memorandum. Critzos was provided time to respond to any response filed by the Marquises.

On September 20, 2021, the circuit court issued a memorandum opinion and order entering judgment in favor of the Marquises. The court found that "the COVID-19 pandemic itself and the ensuing statewide shutdown of all restaurants and similar establishments constitute[d] unforeseen circumstances, especially at the time of the parties contracting." The circuit court further found that the Governor's "executive orders, by undisputed testimony of the [Marquises], had made the sole purpose of their lease an illegal

activity -- frustrating this purpose in a legal sense." The circuit court further found that the Marquises "decision to seek termination after more than 30 days after the Governor's March 16, 2020 executive order (declaring the lease's purpose to be illegal) was a reasonable decision based on commercial frustration and impossibility, and that it was taken after passage of a reasonable amount of time."

Critzos filed a motion for reconsideration on September 29, 2021, as well as a supplement to the motion for reconsideration on October 18, 2021. A hearing was held on the motion on February 28, 2022, after which the circuit court issued an amended opinion on April 7, 2022. The amended opinion reiterated the court's earlier ruling and included additional reasoning. The circuit court discussed, *inter alia*, its findings regarding steps taken by the Marquises to try to stay in business and emphasized the information known to the Marquises at the time they provided notice seeking termination of the lease. The circuit court also issued a separate order denying the motion for reconsideration.

This appeal followed. Additional facts shall be set forth as necessitated by our discussion of the issues on appeal.

## STANDARD OF REVIEW

On appeal, Critzos asks us to review (1) the sufficiency of the evidence to support a judgment in the Marquises' favor; and (2) whether the circuit court correctly applied the related doctrines of frustration of purpose and legal impossibility to this case. Appellate review of a bench trial is governed by Rule 8-131(c), which provides:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence

4

unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witness.

The clearly erroneous standard does not apply, however, when we are reviewing the circuit court's legal conclusions. *Turner v. Bouchard*, 202 Md. App. 428, 442 (2011). We "accord no deference" to the circuit court's legal conclusions but instead our review is for legal correctness. *Id.* (quoting *Cattail Assocs. v. Sass*, 170 Md. App. 474, 486 (2006)). When evaluating whether a circuit court's decision was legally correct, "we give no deference to the trial court findings and review the decision under a de novo standard of review." *Lamson v. Montgomery County*, 460 Md. 349, 360 (2018).

## DISCUSSION

The narrow issue before us in this appeal is whether the Marquises presented sufficient evidence to establish the affirmative defenses of frustration of purpose and legal impossibility. "The principle underlying the frustration of purpose doctrine 'is that where the purpose of a contract is completely frustrated and rendered impossible of performance by a supervening event or circumstance, the contract will be discharged.'" *Panitz v. Panitz*, 144 Md. App. 627, 639 (quoting *Harford Cnty. v. Town of Bel Air*, 348 Md. 363, 384 (1998) (quoting *Montauk Corp. v. Seeds*, 215 Md. 491, 499 (1958))). In *Montauk*, the Supreme Court of Maryland (at the time named the Court of Appeals of Maryland)[2]

_____

[2] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022. *See also* Md. Rule 1-101.1(a) ("From and after December 14, 2022, any reference in these Rules or, in any proceedings before any court of the Maryland Judiciary, any reference in any statute,

5

outlined three factors that courts should consider when determining whether the frustration of purpose doctrine applies: "(1) whether the intervening act was reasonably foreseeable; (2) whether the act was an exercise of sovereign power; and (3) whether the parties were instrumental in bringing about the intervening event." 215 Md. at 499.

The doctrine of frustration of purpose was first recognized in the early twentieth century in the English case of *Krell v. Henry*, 2 K.B. 740 (C.A. 1903). Henry had entered into a contract with Krell to rent Krell's apartment during the daytime hours of June 26 and 27, 1902 to observe the coronation procession of King Edward VII. *Id.* After King Edward fell ill, the coronation was postponed, and Henry refused to pay for the rental. Krell sued, and the court was tasked with determining whether Henry was obligated to pay the rent despite the fact that the coronation did not take place as planned. *Id.* The court held that Henry's performance under the contract was excused, holding that the "coronation procession was the foundation of this contract" and that "the object of the contract was frustrated by the non-happening of the coronation and its procession on the days proclaimed." *Id.* at 751, 754. The court reached a contrary conclusion, however, in the case of *Herne Bay Steam Boat Co. v. Hutton*, 2 K.B. 683 (1903), holding that a renter who contracted to hire a steamship "for the purpose of viewing the naval review and for a day's cruise round the fleet" was not excused from payment following the cancellation of the coronation because the "voyage was not limited to the naval review, but also extend[ed] to a cruise round the fleet."

---

ordinance, or regulation applicable in Maryland to the Court of Appeals of Maryland shall be deemed to refer to the Supreme Court of Maryland . . . .").

"Pursuant to the doctrine of legal impossibility, '[i]f a contract is legal when made, and no fault on the part of the promisor exists, the promisor has no liability for failing to perform the promised act, after the law itself subsequently forbids or prevents the performance of the promise.'" *Harford Cnty.*, *supra*, 348 Md. at 384-85 (citations omitted). "In order to succeed under this theory, however, *performance under the contract must be objectively impossible*." *Id.* at 385 (citations omitted) (emphasis supplied). "The fact that the promised performance of a contractual obligation may be more difficult than was expected at the time the promise was made does not discharge the promisor from his duty to perform." *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 410 (1975).[3]

The circuit court found that the parties to the lease at issue in this case could not have reasonably contemplated a pandemic resulting in a government closure of all businesses. Critzos argues that the potential of a global infectious disease event was known in 2015 at the time the lease was made, and, therefore, the circuit court erred in determining that the COVID-19 related executive orders were not reasonably foreseeable. Critzos points to the 1918 Spanish Flu pandemic as well as more recent epidemic/pandemic events

---

[3] The cases addressing the defenses of frustration of purpose and legal impossibility do not always clearly delineate between the two. Indeed, they are very similar and related defenses. Frustration of purpose applies "where the purpose of a contract is completely frustrated and rendered impossible of performance by a supervening event or circumstance," and legal impossibility applies when, by no fault of the promisor, the "law itself subsequently forbids or prevents the performance of the promise." *Harford Cnty.*, *supra*, 348 Md. at 384-85 (quotations and citations omitted). In this case, where the supervening event at issue is the COVID-19 pandemic and associated executive orders prohibiting businesses from operating as usual, the two defenses are inextricably linked and lend themselves to the same analysis, i.e., whether the COVID-19 executive orders rendered the Marquises' performance under the terms of the lease legally impossible to perform.

7

stemming from avian flu, swine flu, and SARS. We are not persuaded, however, that it was reasonably foreseeable that an infectious disease could cause the level of disruption experienced worldwide beginning in March of 2020.

Indeed, the Supreme Court of Maryland has described "the COVID-19 pandemic" as "the worst public health crisis in a century . . . that suddenly and pervasively altered life worldwide" beginning in early 2020. *Murphy v. Liberty Mut. Ins. Co.*, 478 Md. 333, 351 (2022). As is well known to nearly "[e]veryone above a very young age," the COVID-19 "pandemic upended the patterns, rituals, and timelines of daily life - how one worked, shopped, played, and prayed; where one went; when and how one met with others; who was present for births, deaths, and the major life events in between." *Id.* at 351-52. Although Critzos is correct that the general risk of global infectious disease outbreaks was well known at the time the parties entered into the lease, we agree with the circuit court that the level of disruption caused by the COVID-19 pandemic was not reasonably foreseeable. Furthermore, the remaining two *Montauk* factors -- that the COVID-19 related executive orders restricting business operations were an exercise of sovereign power, and that the parties were not instrumental in bringing about the COVID-19 pandemic -- are not disputed in this appeal.

We turn, therefore, to whether the executive orders issued at the onset of the COVID-19 public health emergency rendered the Marquises' performance under the terms of the commercial lease for a brewery/pub legally impossible or excused by the frustration of purpose doctrine. As the circuit court observed, as of the time this matter was before the circuit court in September 2021, the parties agreed "that they had found no reported

8

Maryland cases on point as to whether the impossibility and frustration defenses properly might be invoked in the context of the COVID-19 pandemic." To our knowledge, there remain no Maryland cases addressing this precise issue.

Other courts have reached differing conclusions as to the applicability of the frustration of purpose/legal impossibility defense in this context. In the recent case of *Firestone Fin., LLC v. WA Gym Naperville N., LLC*, No. 21 C 1183, 2022 WL 4094161, at \*7 (N.D. Ill. Sept. 7, 2022), *appeal filed*, No. 22-2783 (October 6, 2022), the United States District Court for the Northern District of Illinois found that a frustration of purpose defense failed as a matter of law in the context of whether commercial tenant gyms were excused from paying rent to their commercial landlord during COVID-19 related shutdowns.[4] The court found that the defendant gyms had "not alleged that they were completely prohibited from running their business after their payments became due." *Id.* at \*6. The court further noted that "on and after the end of the deferral period on August 25, 2020, [the d]efendants could have opened . . . their doors to members at fifty-percent capacity and subject to social-distancing and masking requirements." *Id.* The court

---

[4] It is the policy of this Court to allow the citation of unreported opinions from federal courts and courts of other states as long as the jurisdiction where it was issued would allow its citation for persuasive value in its courts. *Gambrill v. Bd. of Ed. Of Dorchester Cnty.*, 252 Md. App. 342, 352 n.6 (2021), *rev'd* on other grounds, No. 34, Sept. Term 2021, ___ Md. ___, (2022) (filed Aug. 26, 2022); *CX Reinsurance Co. Ltd. v. Johnson*, 252 Md. App. 393, 414 n.7, 259 A.3d 174 (2021), *rev'd on other grou*nds, No. 47, Sept. Term 2021, ___ Md. ___, (2022) (filed Aug. 29, 2022). Federal Rule of Appellate Procedure 32.1(a) provides that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and issued on or after January 1, 2007." Accordingly, this Court may consider unpublished federal opinions for their persuasive value.

observed that the defendants claimed that the "restrictions made it impossible for them to make a profit," but observed that "[w]hile unfortunate, that situation does not amount to frustration of purpose." *Id.*

A Massachusetts trial court, however, found that executive orders closing Massachusetts businesses frustrated the purpose of a commercial lease when a lease specifically limited the use of the premises "solely" for "the operation of a Caffé Nero themed café under Tenant's Trade Name and for no other purpose" and when the lease required the tenant to operate the café "in a manner consistent with other Caffé Nero locations in the Greater Boston area" and to serve food and beverages "of first-class quality." *UMNV 205-207 Newbury LLC v. Caffé Nero Americas, Inc.*, No. 2084CV01493-BLS2, 2021 WL 714016 (Mass. Super. Ct. Feb. 8, 2021), at *2.[5] Pursuant to the lease, the café could offer take-out sales only "from its regular sit-down restaurant menu." *Id.*

When determining whether the frustration of purpose doctrine applied, the court emphasized "that Caffé Nero could use the leased premises only to operate a café with a sit-down restaurant menu 'and for no other purpose.'" *Id.*at *5. The court found that "[t]he entire purpose of the [l]ease was" for the café to use the leased space "to serve high quality coffee, other drinks, and food to customers who could sit and consume them on the premises." *Id.* Notably, however, the Massachusetts court found that the tenant's rent was

<hr />

[5] Massachusetts courts permit the citation of unreported summary decisions of the Appeals Court of Massachusetts for persuasive value but not for binding precedent. *See Chace v. Curran*, 71 Mass. App. Ct. 258, 260 n.4 (2008). We were unable to locate a case or rule specifically addressing the citation of unreported Massachusetts Superior Court opinions. To our knowledge, the citation of such cases is not prohibited.

only *temporarily* discharged by frustration of purpose for the approximately three-month period during which the Massachusetts Governor's executive order prohibiting indoor seating was in effect. *Id.* at *8.

The Supreme Court of Connecticut recently addressed a somewhat similar lease scenario in the case of *AGW Sono Partners, LLC v. Downtown Soho, LLC*, 343 Conn. 309, 273 A.3d 186 (2022). Prior to the COVID-19 pandemic, the lessee defendants operated a fine-dining restaurant (the "bistro") on the leased premises. 273 A.3d at 192. As in Maryland, Connecticut Governor Ned Lamont issued executive orders that affected the operation of bars and restaurants, closing all bars and restaurants for in-person dining on March 16, 2020. *Id.* Outdoor dining and on premises alcohol consumption was permitted beginning on May 20, 2020, and indoor dining resumed at fifty percent capacity on June 16, 2020. *Id.* at 192-93. The bistro was completely closed between March 11 and May 27, 2020, and "[a]lthough the lease agreement did not prohibit takeout or delivery dining or restrict the restaurant's operation to dine in business only, [the restaurateur] testified that it was not profitable when the bistro attempted to do so." *Id.* at 193. The tenants did not make any rental payments after March 2020, and the bistro ultimately vacated the premises by September 11, 2020. *Id.* at 194. The landlord subsequently filed an action seeking money damages for breach of the lease. *Id.*

The Connecticut Supreme Court determined that "the doctrine of impossibility or impracticability did not excuse the defendants from their obligations to the plaintiff under the lease agreement." *Id.* at 200. The Court emphasized that "most significant[ly], as the trial court found, even under the most restrictive executive orders, use of the premises for

11

restaurant purposes was not rendered factually impossible insofar as restaurants were permitted to provide curbside or takeout service, and the lease agreement did not prohibit curbside or takeout service." *Id.* The Court determined that the lease

> was not frustrated by the pandemic restrictions imposed by the executive orders, even those that barred indoor dining entirely. The language of the lease agreement was not limited to a certain type of dining and -- in contrast to the more restrictive language contained in the sister state cases on which the defendants rely -- did not preclude the takeout and subsequent outdoor dining that the defendants sought to provide.

*Id.* at 204.

What we glean from the above-cited out-of-state cases is that the focus necessarily must be upon what is expressly permitted by the terms of the lease. The lease at issue in this case provided that the Marquises "shall use the Leased Premises for <u>Brewery/Pub only</u>, and for related activities but for no other purposes unless written consent is provided by the Landlord." (Emphasis in original.) Notably, the lease did not prohibit takeout dining -- a factor that other courts have considered important in assessing frustration of purpose and legal impossibility claims. In our view, this case presents a situation substantially more akin to the bistro in *AGW Sono Partners, LLC* and the gyms in *Firestone Fin., LLC* than to the café in *UMNV 205-207 Newbury LLC*.[6]

---

[6] Even in the case of *UMNV 205-207 Newbury LLC*, which involved a lease that limited the tenant's activities on the premises more significantly than the lease at issue in this case, the Massachusetts Superior Court only excused the tenant's nonpayment of rent during the limited time that restaurants were closed to in-person dining. 2021 WL 714016 at *8. In the case at bar, the circuit court found that the tenants' nonpayment of rent was excused for the full remainder of the lease term.

12

The case that the circuit court found to be the "most helpful" Maryland case is *Wischhusen v. Am. Medicinal Spirits Co*., 163 Md. 565 (1933), a Prohibition-era case involving a whiskey distiller who had been hired to produce alcohol for medicinal purposes but was denied a federal permit to do so. The issue before the Court was whether the impossibility of performance defense excused the distiller from performance under his employment contract. *Id.* at 572-73. The Court held that because there was no way for the distiller to fulfill his duties under the contract without violating the law, his performance was excused. *Id.* at 573. The Court emphasized that the distiller's "whole service was confined to the manufacture of whiskey," but, "[u]nder such circumstances, the performance of the contract would be criminal, and so legally impossible, by reason of the refusal of constituted authority to grant the requested permit to manufacture." *Id.*

The circuit court reasoned that the operation of the brewery/restaurant by the Marquises would have been similarly criminal after the issuance of the Governor's executive orders. We disagree. The whiskey distiller in *Wischhusen* was completely prohibited from working in the role for which he had been hired. In contrast, the Marquises were prohibited from serving customers indoors in their restaurant for almost three months, but they were permitted to operate on a carry-out basis or delivery basis throughout the pandemic, and the restaurant was permitted to operate at fifty percent capacity beginning in June of 2020. The restriction in *Wischhusen* served to prohibit the whiskey distiller from performing any and all of the services required under his employment contract, while the executive orders at issue in this case presented far narrower restrictions. The circuit court found that the Governor's executive orders "made the sole purpose of the[] lease an illegal

13

activity -- frustrating this purpose in a legal sense," but, in our view, this was too narrow a reading of the lease. The lease did not limit the Marquises to operating an indoor, in-person restaurant and brewery, nor did the lease prohibit carry-out or delivery service. The executive orders certainly limited the Marquises' business operations, but they did not render the sole purpose of the lease illegal.

When determining that the Marquises' decision to vacate the property and seek the termination of the lease was reasonable, the circuit court focused upon the thirty-day period set forth in the lease for a decision as to termination following a fire or other casualty causing damage to the leased premises. The circuit court observed that the lease provides that if the premises were destroyed by fire or other casualty, the landlord was required to determine whether to repair the premises, or, within thirty calendar days, give notice to the tenant "that it has elected not to reconstruct or repair the [l]eased [p]remises, and the [l]ease and tenancy created hereby shall cease as of the date of the occurrence" of the fire or other casualty. The court looked to this thirty-day period when assessing whether a reasonable person would have "act[ed] as the [Marquises] did" after the issuance of the Governor's first COVID-19-related executive orders prohibiting in-person dining. We fail to see how the thirty-day period specified in the lease during which the landlord could elect to terminate the lease after a fire or other casualty somehow gives rise to an option for the tenant to terminate the lease under entirely different circumstances that did not render the premises entirely unusable.

Nor do we consider it particularly significant that the lease did not contain a *force majeure* clause. Perhaps a *force majeure* clause would have more clearly delineated the

14

options available to the landlord or tenant under these circumstances and apportioned the risk of such an event as desired by the negotiating parties. Nonetheless, the absence of a *force majeure* clause does not suggest that the tenant is somehow excused from nonpayment of rent.

We do not intend to discount the difficulties faced by the Marquises and other restaurateurs and business owners during the unprecedented challenges of the COVID-19 pandemic and associated limitations on the operation of businesses throughout the State of Maryland. It is beyond dispute that the pandemic challenged the Marquises' ability to operate a financially viable business. Economic challenges, however, do not themselves establish the affirmative defenses of frustration of purpose or legal impossibility. Throughout the entirety of the relevant time period, carry-out and delivery service continued to be permitted throughout the State of Maryland. Furthermore, the tenancy continued through the end of 2020, and in-person dining resumed -- albeit at a limited capacity -- in June. The COVID-19 pandemic restrictions did not order a complete shutdown of the Marquises' business. We, therefore, hold that the evidence presented to the circuit court was insufficient to establish the affirmative defenses of frustration of purpose and legal impossibility.

> **JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.**

15